UNITED STATES, Appellee

v

CHARLES M. WILLIAMS, Basic Airman,

U. S. Air Force, Appellant

10 USCMA 615, 28 CMR 181

No. 12,831

Decided August 21, 1959

■

*Captain John H. Leonard* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Sam F. Carter* and *Lieutenant Colonel Robert O. Rollman.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

HOMER FERGUSON, Judge:

At his trial by special court-martial, the accused was found guilty of using disrespectful language to a noncommissioned officer, violation of a lawful general regulation by possessing alcoholic beverages, breach of restriction, being disorderly in station, and wrongfully and materially altering, with intent to defraud, a promotion roster, in violation, respectively, of Uniform Code of Military Justice, Articles 91, 92, and 134, 10 USC §§ 891, 892, and 934. Following disapproval of the charge of violating Article 92, Code, supra, and conduct of a rehearing on sentence, the convening authority approved a penalty of bad-conduct discharge (suspended), partial forfeiture of pay, and confinement at hard labor for six months. The board of review affirmed the findings and sentence, and we granted the accused's petition for review on the question whether the president of the court-martial erred in overruling a defense motion to dismiss Charge III and its specification, alleging that accused was disrespectful in language to a noncommissioned officer.

The specification of Charge III states that the accused:

". . . [A]t, Amarillo Air Base . . . on or about 17 October 1958, was disrespectful in language toward Staff Sergeant J. W. Connell, his superior Non-Commissioned Officer, who was then in the execution of his of-

fice, by saying to him, 'To hell with you Sergeant, I don't have to do anything', or words to that effect."

At the commencement of the trial, the defense counsel moved to dismiss Charge III and its specification on the ground that the accused had previously suffered punishment for this breach of discipline. In support of his motion, evidence was adduced which establishes that the accused, having been apprehended for other offenses, was delivered to the Amarillo Air Base guardhouse for incarceration pending disposition of charges. While being administratively processed by confinement personnel, he was disrespectful in the manner indicated to the noncommissioned officer in charge. On the following morning, pursuant to the provisions of Air Force Manual 125–2, September 2, 1956, entitled "Operation of Confinement Facilities," and the authorization of the commander who later convened the special court-martial, he was placed in "disciplinary segregation" on a reduced diet for an indefinite period not to exceed fourteen days. The imposition of this punitive measure was based solely on the incident forming the basis for the later charge of disrespect. The president of the court denied the defense motion.

The Government urges affirmance of the findings on the basis that accused's segregation was administrative rather

616

than judicial in nature and that, in any event, his offense was a major violation of the Code, supra, thus rendering inapplicable the defense of former punishment. On the other hand, the accused argues that his offense was minor in nature and that, in effect, he suffered nonjudicial punishment for the breach of the Code involved. Hence, his later trial was barred. Manual for Courts-Martial, United States, 1951, paragraph 68*g*; Code, supra, Article 15(e), 10 USC § 815. While neither argument is precisely dispositive of the granted issue, we conclude that, for the reasons hereinafter stated, the ultimate conclusion of appellate defense counsel has merit.

In enacting the Uniform Code of Military Justice, Congress recognized the necessity for maintaining ■ discipline and order in military confinement facilities, and provided in Article 13, Code, supra, 10 USC § 813, that an accused "while being held for trial or the result of trial, . . . may be subjected to minor punishment during that period for infractions of discipline." It is apparent that the provisions of Air Force Manual 125-2, supra, authorizing the imposition of disciplinary segregation on reduced rations, were promulgated on the basis of this statutory provision and to contend that their invocation did not constitute punishment is to disregard the obvious. Not only does the statute use that term, but the Air Force directive refers to the procedure as a "major disciplinary measure" to be imposed only as "a last resort" for the "control and correction" of the individual concerned. Finally, common sense dictates the conclusion that solitary segregation and deprivation of a normal diet are punitive measures. Thus, we reject any notion that these disciplinary measures, even though properly authorized and invoked, are not punitive in nature.

The argument that the accused's offense was not minor need not long detain us. The Table of Maximum Punishments, Manual, supra, paragraph 127*c*, authorizes the imposition for this misconduct of a penalty not to exceed confinement at hard labor for three months and forfeiture of two-thirds pay for a like period. In discussing the same concept with relation to the exercise of nonjudicial powers under Article 15, Code, supra, 10 USC § 815, the Manual, supra, in paragraph 128*b*, points out that the term generally includes misconduct not involving moral turpitude or any greater degree of criminality than is involved in the average offense tried by summary court-martial. These considerations, as well as the attendant circumstances, persuade us that the accused's delict was not so serious as the Government contends and, thus, was properly punishable by disciplinary action under Article 13, Code, supra. Cf. United States v Vaughan, 3 USCMA 121, 11 CMR 121.

Thus, we are confronted with the basic question whether imposition of disciplinary punishment pursuant to Article 13, Code, supra, for a minor offense bars the accused's subsequent trial for the same misconduct.

In United States v Vaughan, supra, we faced a similar issue. There, however, the accused had been both previously punished and subsequently tried for escape from a United States Disciplinary Barracks. In rejecting the defense contention that the doctrine of former punishment was applicable, we acted on the basis that escape from a disciplinary barracks was a major offense. Nevertheless, we noted our reservations concerning the present problem:

". . . Some prisoner offenses are grave and 'merit' trial by court-martial despite prior disciplinary action. Others are venial—and as to them court action is barred by earlier administrative punishment. This answer is furnished alike by reason and regulations. While care should be exercised to appreciate fully the peculiar character of the prison commandant's task and responsibilities and the demanding nature of his problems, we would not hesitate in a proper case to hold trial by court-martial barred in a setting similar to the present one."

**617**

The Government seeks to distinguish *Vaughan, supra,* on the basis that it involved Army regulations authorizing the use of disciplinary measures and specifically providing that the punishment of the accused thereunder for a minor offense would bar his subsequent trial, whereas Air Force Manual 125-2, supra, contains no comparable limitation. See SR 210-185-1, May 31, 1951. Conceding the existence of that distinction, we do not believe it has the asserted effect. On the contrary, the Army regulations do no more than recognize the intent of Congress in enacting the authority for disciplinary punishment conferred in Article 13, Code, supra. Therein it sought to provide for the punishment of infractions "not warranting trial by court-martial." Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 916. ' From that description of legislative purpose, we infer that Congress intended the exception stated in Article 13, Code, supra, to be utilized only when the infraction was not deemed worthy of reference to trial, and that the imposition of punishment thereunder would finally dispose of the matter. We conclude, therefore, that the silence of the Air Force Manual is immaterial, and we now hold unequivocally that disciplinary punishment in military confinement facilities for minor offenses bars any subsequent trial by court-martial of the accused for the same infraction, regardless of the terms of the regulations designed to implement Article 13, Code, supra. As the accused's misconduct was not a serious violation of the Code and as he suffered disciplinary punishment therefor, the president of the court-martial erred in overruling his motion to dismiss Charge III and its specification.

The decision of the board of review is reversed and the record of trial is returned for reassessment of the sentence. Charge III and its specification are ordered dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring):

I concur.

Article 13 of the Uniform Code of Military Justice, 10 USC § 813, authorizes commanding officers of military confinement installations to subject inmates to minor punishment for infractions of discipline. The legislative history of the Article suggests that it was enacted principally to prevent an accused, held pending trial for an offense, from being punished therefor while in pretrial confinement. However, members of Congress realized that incarcerated persons might, before being tried, become recalcitrant and insubordinate and as a means of deterring that sort of misbehavior it authorized confinement officials to take summary action to enforce and maintain the discipline required for proper operation of the facility. Merely because of that grant of authority it would be difficult to ascribe to Congress an intent to change a well-established principle of criminal law and authorize a person to be twice punished for the same offense. Particularly is that true in light of Article 44(a) of the Code, 10 USC § 844, which provides that no person shall, without his consent, be tried a second time for the same offense.

In the case at bar, there can be no question that the reason disciplinary segregation was imposed was to punish the accused for an offense which had been completed prior to the time disciplinary action was taken. Obviously, at times, there may be a combination of punitive, preventive and security reasons prompting disciplinary sanctions and in that situation a different principle might apply, but I find only the first reason present in this case. In that connection, I have not overlooked the contention that the action taken was to maintain peace and order in the stockade but I do not find that assertion sustainable under the facts of this case.

This record bears out the conclusion that the commanding officer proceeded under Article 13 of the Code, supra, for he never employed the procedural steps required by Article 15, Uniform Code of Military Justice, 10 USC § 815. But

that is not to say he did not impose nonjudicial punishment, because Article 13 suggests a summary proceeding and it does not furnish any procedural or penalty guides. Absent any other Congressional restrictions on administrative or nonjudicial punishment, which are not covered by Article 44(a), supra, I believe Article 15 must be deemed to mark out the limitations Congress intended to impose to prevent double punishment for the same crime when the pretrial offense is minor and nonjudicial punishment for the misconduct is imposed. When the two Articles are construed together in that manner, Article 15 supplements Article 13 and a statutory privilege accorded an accused is thereby protected. Moreover, the officials in charge of military prisons or stockades are left with adequate means to cope with the problems of control and discipline.

I make these brief observations because I believe it advisable to point out that confinement officials have the right to take administrative disciplinary measures to keep order in penal institutions without regard to the powers granted by either Articles 13 or 15, supra. However, if they elect to impose punishment for infractions of a minor nature merely to chastise for that which is past and not for security or the prevention of agitation or trouble, then trial for the same offense is barred.