UNITED STATES, Appellee,

v.

Inmate Thomas W. CODER, 281–74–1297, A person in the custody of the Armed Forces serving a sentence imposed by court-martial, United States Army, Appellant.

ACMR 9301739.

U.S. Army Court of Military Review.

14 April 1994.

For Appellant: Major Robin L. Hall, JAGC, Captain Thomas D. Wight, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC, Captain Louis E. Peraertz, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

OPINION OF THE COURT

GRAVELLE, Senior Judge:

The appellant, a sentenced prisoner at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, was convicted, in accordance with his pleas, of violating a lawful general regulation by possessing a handmade knife and of aggravated assault upon another prisoner, in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (1988) [hereinafter UCMJ]. A military judge sitting as a general court-martial sentenced him to be confined for one year. The convening authority approved the adjudged sentence.

The issue presented in this case is whether the appellant must receive credit against his adjudged sentence to confinement for "administrative disciplinary" sanctions imposed by the Commandant, U.S. Disciplinary Barracks, on the recommendation of the Discipline and Adjustment Board. We hold that no credit against the adjudged sentence to confinement is required or warranted.

I.

The appellant was previously convicted by general court-martial in 1987 of conspiracy to commit murder and of premeditated murder. He was sentenced to a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved that sentence, and this court subsequently affirmed his conviction and sentence. *United States v. Coder*, 27 M.J. 650 (A.C.M.R.1988), *pet. denied*, 28 M.J. 265 (C.M.A.1989).

The appellant's most recent conviction occurred on 4 October 1993. It resulted from the appellant's action in fashioning a homemade knife and using it to attack and stab another prisoner with whom he had a dis-

pute. The convening authority, the Commander, of the U.S. Army Combined Arms Command and Fort Leavenworth, approved the sentence on 3 January 1994.

On 18 October 1993, subsequent to the court-martial, a Discipline and Adjustment Board met at the Disciplinary Barracks to consider what administrative disciplinary action it would recommend regarding the appellant's conduct in possessing the homemade knife and stabbing another prisoner with it. The board recommended that the appellant be reprimanded, put into disciplinary segregation for an indefinite period *not to exceed* 60 days, forfeit 365 days of accrued "good conduct" time,[1] lose his health and comfort gratuity for 2 months, and forfeit cigarettes for 60 days (but recommended suspension of the cigarette forfeiture for 90 days). On 24 October 1993, the Acting Commandant, U.S. Disciplinary Barracks, approved the recommendation of the board, except for that part of the recommendation pertaining to the forfeiture of the health and comfort gratuity.

The Acting Commandant of the Disciplinary Barracks acted on the recommendation of the board prior to the convening authority's action on the court-martial sentence. In his post-trial clemency submissions to the convening authority, the defense counsel apprised the convening authority of the administrative disciplinary measures that had been recommended by the Discipline and Adjustment Board and approved by the Acting Commandant. The defense counsel argued that clemency was warranted because the administrative disciplinary measures were double punishment and were actually more severe than the court-martial sentence. Having been made aware of the administrative disciplinary measures, the convening authority nevertheless decided against clemency and approved the sentence as adjudged.

## II.

The appellant now asserts that the convening authority erred by not giving him day-for-day credit against his adjudged sentence to confinement for the forfeiture of 365 days "good conduct credit" imposed as a result of the Discipline and Adjustment Board hearing.[2] He cites *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989), a case mandating day-for-day credit for nonjudicial punishment. The government disagrees, asserting that the separate action of the Discipline and Adjustment Board was purely administrative in nature, and was authorized under provisions of R.C.M. 306(c)(2) and Army Regulation 190–47.[3]

The contending arguments summarized above are similar to those first raised over forty years ago in *United States v. Vaughan*, 3 U.S.C.M.A. 121, 11 C.M.R. 121, 1953 WL 1990 (1953). In *Vaughan*, the U.S. Court of Military Appeals rejected the appellant's argument that the "administrative disciplinary power" of the Commandant was the same as his authority to impose nonjudicial punishment under Article 15, UCMJ. The court also rejected appellant's argument that the court's sentence and the Commandant's approval of administrative disciplinary sanctions necessarily constituted double jeopardy.[4]

Six years after deciding *Vaughan*, the Court of Military Appeals decided *United States v. Williams*, 10 U.S.C.M.A. 615, 28 C.M.R. 181, 1959 WL 3434 (1959). Williams, while in pretrial confinement, was disrespectful to a noncommissioned officer and was placed in "disciplinary segregation" on a re-

---

1. The report of the Discipline and Adjustment Board indicates that the appellant had accrued a total of 707 "good conduct" days.

2. In deciding the issue of credit against the adjudged sentence, we have not limited ourselves to the deprivation of "good conduct time" but have also considered the other portions of the administrative discipline imposed by the Disciplinary Barracks, including the imposition of up to sixty days disciplinary segregation. We note that this latter provision is open-ended as to length, and the record does not show how much time the

appellant actually spent in disciplinary segregation.

3. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 306(c)(2) [hereinafter R.C.M.]; Army Regulation No. 190–47, United States Army Correctional System (C1, 1 Nov. 1980) [hereinafter AR 190–47].

4. There is no specific constitutional claim of double jeopardy made in the case before us.

duced diet for an indefinite period not to exceed fourteen days. He was also charged with disrespect towards the noncommissioned officer under Article 91, UCMJ, 10 U.S.C. § 891. At trial, the defense counsel moved to dismiss the disrespect charge because of prior punishment. The court's refusal to dismiss the charge, Williams' subsequent conviction of the charge, and the Air Force Board of Review's refusal to grant relief led to Williams' appeal to the Court of Military Appeals. As it had in *Vaughan*, the government argued that disciplinary segregation was purely administrative in nature. Williams argued that the prior administrative discipline was imposed for a "minor" offense, and therefore barred subsequent trial by court-martial.

Judge Ferguson analyzed the issue in terms of Article 13, UCMJ, 10 U.S.C. § 813, which prohibits prior punishment but permits "minor punishment" during the period of pretrial arrest or confinement "for infractions of discipline." UCMJ art. 13. The court found that "Congress intended the [minor punishment] exception stated in Article 13 ... to be utilized only when the infraction was not deemed worthy of reference to trial, and that imposition of punishment thereunder would finally dispose of the matter." *Williams*, 28 C.M.R. at 184, 1953 WL 1990. The court held that Williams' prior punishment for a minor infraction of discipline barred his subsequent conviction by court-martial for the same act. *Id.*

A year after deciding *Williams*, the Court of Military Appeals decided *United States v. Harding*, 11 U.S.C.M.A. 674, 29 C.M.R. 490 (1960), a case with facts much closer to those we find in the case before us. The court held that the trial and punishment of a prisoner for a major infraction committed while in *post-trial* confinement was not barred by his disciplinary segregation following the incident and prior to the court-martial.

Finally, our predecessor court, in discussing these three precedents of the Court of Military Appeals, stated in 1962:

It is now well established that disciplinary segregation imposed pursuant to applicable Army regulations is a form of nonjudicial punishment that will bar subsequent trial by court-martial *only for a minor offense.*

United States v. Gonzalez, 32 C.M.R. 475, 477, 1962 WL 4519 (A.B.R.1962), *pet. denied,* 13 U.S.C.M.A. 472, 32 C.M.R. 472 (1962) (emphasis in original). *Accord, United States v. West,* 35 C.M.R. 639, 1965 WL 4737 (A.B.R.1965); *United States v. Rosencrons,* 34 C.M.R. 512, 1963 WL 4780 (A.B.R.1963).

All of the cases discussed above involve administrative discipline occurring prior to a court-martial for the same misconduct for which administrative discipline was administered. None discuss the matter of credit against the adjudged sentence. Here, imposition of administrative discipline occurred after trial but before the convening authority's action on the case, so there was no opportunity to litigate the matter at trial, but there was an opportunity to raise the issue with the convening authority.

In addition to the factual differences, we find that *Vaughan* and *Williams* are also legally inapposite to the issue before us because they are based on specific wording of either Article 13, UCMJ, a statute dealing with punishment for minor infractions occurring during *pretrial* arrest or confinement, or on the specific wording of Article 15(f), UCMJ.[5] We do not have either situation here.

Despite its legal and factual differences, we do find that *Vaughan* is instructive in deciding the issue before us. Judge Brosman in *Vaughan* pointed out the similarities and differences between the warden of a civilian prison and the military commandant of a disciplinary barracks. *Vaughan* recognized the general proposition that both civilian and military wardens have the power to discipline prisoners for infractions of prison rules. *Vaughan*, 11 C.M.R. at 124, 1953 WL 1990. Our review of more recent federal law shows that there has been no change in this

---

5. We recognize that in *Gonzalez*, quoted above, we equated disciplinary segregation to nonjudicial punishment. While the Court of Military Appeals found a useful analogy in the provisions of Article 15, UCMJ, we do not believe that our supervisory court or our own court meant that administrative discipline *was* "nonjudicial punishment" in the sense of Article 15, UCMJ.

general proposition. Courts have long recognized that prison officials must be able to "further correctional goals, such as retribution or deterrence, but also to serve institutional objectives, the most basic of which is the internal security of the prisons themselves." *Rowe v. Debruyn*, 17 F.3d 1047, 1052–53 (7th Cir.1994). *See also Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). The court in *Debruyn* also recognized the need for giving prison officials broad discretion to dictate policies that promote order and safety for inmates and correctional staff. Our own court has recognized the concept. "[G]reat deference should be paid to the decisions of the facility commander concerning matters pertaining to institutional security, safety, and the preservation of internal order and discipline." *United States v. Martinez*, 19 M.J. 744, 753 (A.C.M.R.1984) (citing *Hewitt·v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).

■ A review of recent federal court decisions also shows that, like the Disciplinary Barracks, civilian prisons have a system of due process review of prisoners' misconduct involving a board proceeding, and all have the power to impose "administrative disciplinary" sanctions. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Debruyn*, 17 F.3d 1047; *Smith v. Massachusetts Dept. of Correction*, 936 F.2d 1390 (1st Cir.1991); *Bolden v. Alston*, 810 F.2d 353 (2d Cir.1987); *Ward v. Johnson*, 667 F.2d 1126 (4th Cir.1981). Those administrative disciplinary sanctions may include depriving a prisoner of administrative "good time credit" so long as he is afforded a due process hearing. *Wolff*, 418 U.S. 539, 94 S.Ct. 2963; *United States v. Hagler*, 7 M.J. 944 (N.M.C.M.R.1979). The removal of such privileges from a prisoner is a purely internal disciplinary function of the correctional system's administration. *See*

*generally Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).[6] The imposition of administrative discipline does not prohibit subsequent criminal prosecution for the same deed. *United States v. Williamson*, 469 F.2d 88 (5th Cir., 1972); *United States v. Lepiscopo*, 429 F.2d 258 (5th Cir., 1970); *United States v. Cordova*, 414 F.2d 277 (5th Cir., 1969); *Keaveny v. United States*, 405 F.2d 821 (5th Cir., 1969); *United States v. Shapiro*, 383 F.2d 680 (7th Cir., 1967); *Mullican v. United States*, 252 F.2d 398 (5th Cir., 1958).

We believe that this case is controlled by the language of Article 58(a), UCMJ, and 10 U.S.C. § 858, both dealing with the post-trial incarceration of convicted soldiers. The UCMJ states in pertinent part:

> Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by court-martial ... whether or not the discharge or dismissal has been executed, may be carried into execution by confinement in any place of confinement under the control of any of the armed forces. . . .

UCMJ art. 58(a). *See also Martinez*, 19 M.J. at 750–51.

The United States Code provides in pertinent part that:

> The Secretaries concerned may provide for the establishment of such military correctional facilities as are necessary for the confinement of offenders against [the punitive articles of the UCMJ].
>
> . . . .
>
> There shall be an officer in command of each major military correctional facility. Under regulations to be prescribed by the Secretary concerned, the officer in command shall have custody and control of

6. In the case before us, the appellant does not question the authority of the Commandant to impose administrative discipline on him. Nevertheless, we have discussed that authority in this opinion to clarify the separate sources of the Commandant's disciplinary powers. Further, the appellant does not assert any defects in the administrative due process hearing, nor do we believe that Article 66(c), UCMJ, 10 U.S.C. § 866(c), gives us authority to decide the procedural or substantive correctness of such a hearing even if raised. Normally the judicial remedy for any errors in a Discipline and Adjustment Board hearing lies elsewhere. *See, e.g., Walden v. Bartlett*, 840 F.2d 771, 775 (10th Cir.1988).

offenders confined within the facility which he commands. . . .

10 U.S.C.A. § 951(a) and (c) (1983).

Both the Secretary of Defense and the Secretary of the Army have issued implementing instructions conferring the same general powers on the Commandant as those held by a warden in a civilian penitentiary. *See generally* Department of Defense Directive 1325.4, Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities (May 19, 1988) [hereinafter DOD Dir.] and AR 190–47.[7]

Judge Brosman, in *Vaughan,* points out one major difference between civilian and military wardens. In addition to administrative disciplinary powers, the commandant of a disciplinary barracks, as a military commander, has certain powers not available to a civilian warden. As a commander, he possesses the power to impose nonjudicial punishment under Article 15, UCMJ, and to convene a court-martial. *Vaughan,* 11 C.M.R. at 124, 1953 WL 1990. It is when these duties become blurred, as apparently occurred in *Vaughan* and its progeny, that problems can result. We find no such blurring in the case before us.

■ We find the imposition of administrative disciplinary sanctions separate and distinct from the adjudged and approved court-martial sentence to confinement. We find no "double punishment" as asserted by the appellate defense counsel, and do not believe that credit is required or warranted.

Since the Court of Military Appeals decisions cited above, new regulatory and judicial rules have evolved which require credit for pretrial confinement, for pretrial punishment, and for other reasons. *See, e.g.,* R.C.M. 304(f) and 305; *Pierce,* 27 M.J. 361; *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). However, we find no intent of Congress, and no provision in the UCMJ, Manual for

Courts–Martial, secretarial regulations, or case law suggesting or requiring credit against adjudged confinement under circumstances such as presented here. Rule for Courts–Martial 306(c)(2), DOD Dir. 1325.4, and AR 190–47, para. 9–12(b) permit administrative measures such as were taken here without any requirement for credit against the adjudged sentence. We therefore find the *Pierce* analogy inapposite. Nonjudicial punishment imposed under Article 15, UCMJ, is simply not the same as "nonjudicial punishment" imposed as "administrative discipline" as the terms are used in the precedents cited in this opinion. The former derives from a military commander's power to discipline, while the latter derives from a prison warden's power to maintain control and discipline. We therefore find no merit in the appellant's claim, and hold that the appellant is not entitled to credit against his sentence to confinement because of the actions taken by the Discipline and Adjustment Board.

We have also considered the issue personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (A.C.M.R. 1982), and likewise find no merit in it.

The findings of guilty and the sentence are affirmed.

Judge JOHNSTON concurs.

BAKER, Judge, concurring in part and dissenting in part:

I agree with my brothers that the findings of guilty should be affirmed. We part company on the double punishment issue.

The appellant's situation in this case is analogous to that of a soldier who returns to his unit after conviction by court-martial. Clearly, the soldier's commander can take nonpunitive administrative actions to main-

---

7. The DOD Dir. authorizes commanders of confinement facilities to impose administrative disciplinary measures on prisoners under their control, and authorizes the establishment of disciplinary and adjustment boards. DOD Dir. 1325.4, Encl. 1, § G. Chapter 9 of AR 190–47 defines the authority and procedures of the Discipline and Adjustment Board at the United States Disciplinary Barracks. In *Vaughan,* the Court of

Military Appeals cited an Army Regulation then in effect which provided that disciplinary action taken by a discipline and adjustment board did not preclude trial by court-martial. A similar provision appears in the present regulation. Neither the DOD Directive nor the Army Regulation discusses credit against confinement because of administrative disciplinary measures.

tain unit discipline. For example, he can order the soldier to stay away from his victim or admonish him to quit drinking or limit his pass privileges. Just as clearly, the Commandant of the Disciplinary Barracks can take nonpunitive measures to ensure safety or prevent agitation, etc. Administrative segregation comes to mind and is specifically provided for in AR 190–47. However, neither the commander nor the Commandant can impose punishment. The source of this limitation is not the Double Jeopardy Clause of the Constitution, which only bars a second federal trial; rather it is congressional intent and military case law. *See United States v. Pierce,* 27 M.J. 367, 369 (C.M.A.1989).

. Determining whether an individual is being nonjudicially punished, as opposed to administratively disciplined, can be difficult. Indeed, the intent of punishment is often to correct a tendency towards indiscipline. Some of the "administrative and disciplinary actions" which can be recommended by a Discipline and Adjustment Board are limited to administrative discipline.[1] Disciplinary segregation, however, clearly constitutes punishment—to such a degree that it bars subsequent court-martial for a minor offense. *United States v. Williams,* 10 U.S.C.M.A. 615, 28 C.M.R. 181, 1959 WL 3434 (1959). Forfeiture of "Good Conduct Time" may also constitute punishment. *United States v. Rosencrons,* 34 C.M.R. 512, 1963 WL 4780 (A.B.R.1963).

*Pierce* requires court-martial convening authorities to "reconcile" legitimate *pretrial* nonjudicial punishment with punishment adjudged by a court-martial by directing credit against the adjudged sentence. Convening authorities must also direct credit when a military judge determines there has been illegal *pretrial* punishment. *United States v. Suzuki,* 14 M.J. 491 (C.M.A.1983).

Post-trial punishment is apparently an issue of first impression for this court. Our authority is, after all, confined to the review of cases referred for our review. UCMJ, art. 66. In this case, however, additional punishment was imposed before the convening authority's action and was properly brought to the attention of the convening authority by the appellant's trial defense counsel. Given these circumstances, there appears to be no reason to treat additional punishment of the appellant differently just because it took place after his court-martial.

The Court of Military Appeals having spoken as to the punitive nature of disciplinary segregation, it seems entirely proper that the convening authority determine how many days of such segregation were served and order appropriate credit in the action.[2] I would return this case to The Judge Advocate General for a new action by the same convening authority.

---

1. USDB Form 244–E lists fourteen possibilities for action. A "change in detail, domicile, or cell" could hardly be construed as punishment. Nor could "reduction of the Health and Comfort gratuity" be construed as punishment. "Disciplinary segregation" and "extra duty," on the other hand, are more akin to the sorts of nonjudicial punishments possible under Article 15, UCMJ.

2. Credit for forfeited "Good Conduct Time" is problematic. It seems obvious that a prisoner should not be credited with good time when he commits a court-martial offense, at least for the month or year during which the offense occurs. Whether some or all of the good time involved improper punishment seems more a matter for Disciplinary Barracks officials and administrative appellate authorities than for the convening authority or this Court. Credit against the sentence without at least initial reconsideration by Disciplinary Barracks officials would be presumptuous.