UNITED STATES, Appellee

v.

Larry E. MARSHALL, Technical
Sergeant, U.S. Air Force,
Appellant.

No. 93–0375.
Crim.App. No. S29406.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 27, 1996.

Decided Sept. 30, 1996.

For Appellant: *Captain Richard D. Desmond* (argued); *Colonel Jay L. Cohen* (on brief).

For Appellee: *Major Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On February 28 and March 1, 1991, appellant was tried by a special court-martial composed of officer and enlisted members at Travis Air Force Base, California. Contrary to his pleas, he was found guilty of disobeying a lawful order to provide a specimen for a blood alcohol test, driving under the influence of alcohol, and being drunk and disorderly in violation of Articles 90, 111, and 134, Uniform Code of Military Justice, 10 USC §§ 890, 911, and 934, respectively. He was sentenced to a bad-conduct discharge and reduction to pay grade E–1. On July 2, 1991, the convening authority approved the sentence as adjudged.

Appellant appealed his conviction to the Court of Military Review (now the Court of Criminal Appeals). He asserted that his civilian defense counsel was ineffective. On September 23, 1992, the appellate court below rejected this assertion and affirmed the findings and sentence in an unpublished opinion.

Appellant then sought review in this Court on the basis that he was denied effective assistance of counsel. In an Order dated March 9, 1994, this Court set aside the decision of the then-Court of Military Review and ordered a factfinding hearing pursuant to *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), "solely for the purpose of determining the advice given as to the matter raised in" appellant's "affidavits and the tactical and legal considerations on which the advice was based." 39 MJ 418.

The *DuBay* hearing was held at Travis Air Force Base, California, on May 19 and 26, 1994. After further review in light of the *DuBay* hearing and the findings of fact, the now-Court of Criminal Appeals, in an unpublished opinion dated February 8, 1995, reaffirmed its earlier decision that appellant was not denied effective assistance of counsel.

On July 17, 1995, this Court granted review of the following issue raised by appellate defense counsel:

> WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE TURNED DOWN AN ARTICLE 15 AFTER HIS CIVILIAN DEFENSE COUNSEL PROVIDED INCORRECT AND UNTENABLE ADVICE CONCERNING THE OUTCOME OF GOING TO TRIAL.

We hold that appellant was not denied effective assistance of counsel. His civilian defense attorney presented him with competent legal advice concerning the options available to him and their ramifications for his future military career. *United States v. Cordes,* 33 MJ 462 (CMA 1991); *United States v. King,* 30 MJ 59, 69–70 (CMA 1990); *see generally Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (holding that criminal defendant must make "difficult choices"); *see also United States v. Boone,* 42 MJ 308, 313 (1995) (holding effective assistance of counsel is measured by combined efforts of entire defense team).

Prior to December 1990, while in Korea, appellant received two unsatisfactory Evaluation Performance Reports (EPRs), an Unfavorable Information File entry (UIF), and a control roster action. He met with a civilian attorney, Mr. Paul Bernstein, on December 18, 1990, to discuss removal of these negative actions from his personnel records so as to salvage his military career. On December 22, 1990, before Mr. Bernstein was officially retained, appellant was apprehended at the main gate of Travis Air Force Base for driving while intoxicated. On January 3, 1991, appellant was offered punishment under Article 15, UCMJ, 10 USC § 815, for willfully driving with a suspended license and for drunk and disorderly conduct. Captain (Capt.) Trigg was made available to counsel appellant on the Article 15. On January 7, 1990, appellant then returned to Mr. Bernstein for legal advice concerning the notice of Article 15 that had been served on him. Mr. Bernstein was officially retained sometime in mid-January 1991.

Capt. Trigg and Mr. Bernstein both told appellant that the Article 15 was an administrative punishment and that he could accept it or turn it down and demand trial by court-martial. However, appellant then received conflicting advice from his attorneys which is fully detailed in the record of the *DuBay* Hearing. Capt. Trigg advised appellant to accept the Article 15, but Mr. Bernstein recommended that appellant demand trial by court-martial. Mr. Bernstein's recommendation and appellant's acceptance of it is the basis for appellant's claim of ineffective assistance of counsel.

---

■ The Sixth Amendment and Article 27, UCMJ, 10 USC § 827, confer upon a military accused the right to effective assistance of counsel. *United States v. Scott,* 24 MJ 186, 187–89 (CMA 1987). The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), enunciated a test to evaluate claims of ineffective assistance of counsel. This two-pronged test requires the defendant to demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064; *cf. United States v. Polk,* 32 MJ 150, 153 (CMA 1991) (construing *Strickland*). In sum, in order to constitute ineffective assistance, counsel's errors must be so serious as to deprive the defendant of a fair trial, "a trial whose result is reliable." *Strickland, supra* at 687, 104 S.Ct. at 2064; *accord United States v. Sanders,* 37 MJ 116, 118 (CMA 1993).

■ An appellate court's evaluation of attorney performance is made from counsel's perspective at the time of the conduct in question. *Strickland, supra* at 689, 104 S.Ct. at 2065. The competence of counsel is presumed. *Id.; United States v. Scott, supra* at 188; Art. 27. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland, supra* at 690, 104 S.Ct. at 2066. Thus, judicial scrutiny of counsel's performance is highly deferential. *Id.* at 691, 104 S.Ct. at 2066. However, even this restricted

scrutiny of counsel's performance is not required if a person has no right to counsel at the time the averred ineffective assistance occurred. *See Evitts v. Lucey*, 469 U.S. 387, 396 n. 7, 105 S.Ct. 830, 836 n. 7, 83 L.Ed.2d 821 (1985), citing *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

Turning to appellant's claim, we note initially that Article 15 does not expressly require that a lawyer be made available to a servicemember before deciding to elect nonjudicial punishment or demand trial by court-martial. Neither does Part V, Manual for Courts–Martial, United States, 1984, expressly require counsel. Nevertheless, under Air Force Regulations, a servicemember has a right to a military lawyer to explain his or her rights under Article 15 and "help [him or her] decide what to do." AF Form 3070 (June 1985); *see United States v. Mack*, 9 MJ 300, 320–21 (CMA 1980). In this context, an important preliminary question exists whether the *Strickland* and *Scott* decisions on effective assistance of counsel are applicable in this case. *See Evitts v. Lucey, supra.*

■ In this regard we note that the decision to impose nonjudicial punishment, to notify a servicemember of this intended action, and to afford him or her the right to demand trial by court-martial requires formulation of criminal charges under the Uniform Code of Military Justice. Para. 4a(2), Part V, Manual, *supra*; para. 59c, AFR 111–9 (6 July 1990). However, it does not require the swearing of charges as required for courts-martial preferral. RCM 307(b), Manual, *supra; see United States v. Wattenbarger*, 21 MJ 41, 43 (CMA 1985). In appellant's case, preferral of charges occurred after appellant decided to forgo nonjudicial punishment and demanded trial by court-martial. Since adversary proceedings had not been initiated against him at the time of the averred ineffectiveness of his counsel, no Sixth Amendment claim would normally lie. *See United States v. Kendig*, 36 MJ 291, 296 (CMA 1993); *United States v. Wattenbarger, supra.*

Nevertheless, appellant asserts that, in his case, the offer to accept nonjudicial punishment in lieu of trial by court-martial re-mained open until the first day of trial. He argues, therefore, that since his decision to forgo nonjudicial punishment upon advice of counsel continued after preferral of charges, it came within the scope of the Sixth Amendment. Some support exists for such a legal argument. *See United States v. Lonetree*, 35 MJ 396 (CMA 1992); *see also United States v. Mack, supra* at 320. Moreover, we presume the opportunity to consult with counsel provided in service regulations was intended to be meaningful in its own right. In any event, we can decide appellant's case by simply assuming that the Sixth Amendment and its standard for effective assistance of counsel apply. *See also United States v. Kelly*, 45 MJ 259 (1996) (holding right to counsel to make decision to accept nonjudicial punishment implicit in various military statutes).

■ Appellant basically contends that civilian counsel "gave appellant flat out wrong advice." He first challenges as erroneous the advice purportedly given to him "that accepting Article 15 would be an admission of guilt." Final Brief at 13. He also challenges his counsel's averred representation "that he would not receive a bad-conduct discharge from the court-martial members." In addition, he notes that civilian defense counsel "interfered with" military defense counsel's "attempts to dissuade appellant from going to trial." *Id.* at 14. Finally, he challenges civilian counsel's "untenable" "'tactical' reasons for proceeding to court." *Id.* at 17, 16.

■ At the outset, we note that Article 15 permits a commanding officer to impose nonjudicial punishment upon servicemembers under his command. Proceedings under this Article do not constitute criminal prosecutions. *See United States v. Kendig, supra* at 295. Moreover, punishments under this codal provision are generally less severe than can be awarded by a court-martial. *See* para. 5, Part V, Manual, *supra.* An Article 15 punishment, however, can serve as a basis for administrative separation. An acquittal at a court-martial cannot. Moreover, an Article 15 proceeding is not a bar to a later prosecution by court-martial for a serious offense. *See United States v. Pierce*, 27 MJ 367 (CMA 1989); Art. 15(f).

As noted above, we must view appellant's claims from counsel's perspective at the time the challenged advice was given. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Appellant's purpose in consulting Mr. Bernstein is particularly relevant in this regard. It was undisputed that appellant's main goal was to save his jeopardized career. In light of the offenses of which appellant was accused, he only had two options: accept an Article 15 proceeding and hope no discharge proceedings would be initiated, or demand trial by court-martial and hope he would secure an acquittal or not receive a punitive discharge in the event he was convicted.

Appellant's initial complaint against civilian counsel concerns advice that accepting an Article 15 would be an admission of guilt. At the *DuBay* hearing, civilian defense counsel denied giving such advice to appellant, and the military judge made no finding of fact to the contrary. The *DuBay* record states:

Q Sir, did you advise Sergeant Marshall that if he were to accept the 15 that even if he weren't guilty of all of the specifications, that by accepting the 15 itself that he would be admitting to guilt to everything contained therein?

A No. What I am sure I advised him of was that he would be punished under Article 15 because at least some of what he was charged with he would be found—I don't know if "guilty" is a proper word—but he would be punished. Once he had an Article 15, that would be part of the administrative discharge package. So, the specific specifications weren't really critical to his overall strategy. His overall strategy was to try and save his career and not get discharged. You would want to get technical about the specifications if somehow you can cause a whole Article 15 to be thrown out, but that wasn't likely.

Moreover, the importance of such advice in this case is not readily apparent. The relevant dispute between counsel was whether the expected Article 15 punishment would lead to appellant's processing for an administrative discharge. The precise legal characterization of nonjudicial punishment had no bearing on that question. While the two defense counsel differed on the probable course of action by the command, neither disputed that such administrative discharge action was legally possible on the basis of nonjudicial punishment. Accordingly, the complained of legal advice, even if defective, was not prejudicial to appellant.

Appellant next complains that civilian defense counsel incorrectly advised him that "he would not receive a bad conduct discharge from court-martial members." Civilian defense counsel again denied that he gave such advice to appellant, and the military judge made no finding to the contrary. The *DuBay* record states:

Q Okay. What advantages did you see in going to a Court? You mentioned the burden of proof as one.

A Burden of proof. Sometimes court-martial members are a little more reluctant to adjudge a BCD. I've participated in and defended quite a few court-martials which resulted in non BCDs where the punishment was roughly the equivalent to that of an Article 15 punishment. So—

Q Did you tell Sergeant Marshall that he would not get a conviction if he went to a court-martial?

A No. You don't—I mean what you do is you try and pick the least bad of what your alternatives are.

Q Did you tell him that he certainly wouldn't get a BCD if he went to a court-martial?

A No. In any type of legal matter you can never guarantee any particular outcome. In this situation, you are just choosing between bad alternatives. I mean you are not choosing a situation which is good; you are just trying to choose between the least bad of the alternatives.

Q Were there any other kind of promises made by you to Sergeant Marshall concerning the outcome of the court?

A Promises, no.

Q Whose decision was it to actually go to the court-martial?

A Well, it was the client's decision. It is the client's decision to contact me and to hire me. Basically his whole objective was that he saw his career ending unless he took some sort of action; *it was all or nothing in his situation.* I guess he really viewed his seventeen year career as trying to save it.

(Emphasis added.)

■ Moreover, even if civilian counsel miscalculated the likely end result of appellant's court-martial, an erroneous sentence estimation by defense counsel is not necessarily deficient performance rising to the level of ineffective assistance of counsel. *See United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990); *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990); *Wellnitz v. Page,* 420 F.2d 935, 936 (10th Cir.1970); *cf. United States v. Straight,* 42 MJ 244 (1995) (holding defense counsel advice concerning the increase of sentence on reconsideration was erroneous but not prejudicial). Moreover, here civilian counsel advised appellant that even if he did not receive a bad-conduct discharge, there still might be an administrative discharge board following the court-martial. Accordingly, Mr. Bernstein's advice concerning possible results of the court-martial did not constitute ineffective assistance of counsel. *See generally United States v. Bedania,* 12 MJ 373 (CMA 1982).

Finally, the basis for civilian counsel's advice to reject nonjudicial punishment and demand trial by court-martial is evident in the findings of fact at the *DuBay* hearing. Those findings show that at the time of trial, appellant had completed 17 years of active service in the Air Force, 3 years short of retirement, and desired retention. As noted by the Court of Criminal Appeals, both appellant and his civilian counsel believed that appellant could face an administrative discharge if he accepted nonjudicial punishment. Unpub. op. at 2. Moreover, testimony given at the *DuBay* hearing by appellant's squadron commander, Lieutenant Colonel Harsha,

confirmed that an administrative discharge proceeding would have been initiated had appellant pursued the Article 15 route. Thus, a finding of not guilty at a court-martial constituted the only real hope appellant had to save his career.

We also note that an evaluation of the entire record suggests that civilian defense counsel did provide effective legal assistance to appellant. The adjudged sentence in this case was a bad-conduct discharge and reduction to the grade of E–1. However, civilian defense counsel then submitted a clemency submission pursuant to RCM 1105 emphasizing that appellant had voluntarily enrolled in and completed an inpatient alcohol program following his trial. In addition, he established that the program director confirmed that appellant had a positive attitude about his rehabilitation. Finally, civilian counsel's clemency package led to a recommendation by the staff judge advocate that the convening authority approve only a reduction to grade E–5 and suspend the bad-conduct discharge for a period of one year. Before the clemency decision was made, however, appellant committed more acts of misconduct that resulted in preparation of a new staff judge advocate's recommendation and approval of the bad-conduct discharge adjudged by the court-martial.

■ In sum, appellant received conflicting advice from his civilian attorney and military defense counsel, and obvious tension existed between them. Nevertheless, viewed in its entirety, appellant was presented with legal advice concerning his available options and the practical ramifications of either option that he might choose. *See United States v. Boone, supra.* Thus, we conclude that, in advising appellant, civilian counsel's performance did not fall "measurably below the performance ... [ordinarily expected] of fallible lawyers." *See Polk,* 32 MJ at 153. Of course, in hindsight, it is clear that appellant's decision to reject nonjudicial punishment did not save his Air Force career. This Court, however, will not engage in second-guessing counsel's strategic or tactical decisions reasonably designed to avoid that re-

sult. *See United States v. Rivas,* 3 MJ 282, 289 (CMA 1977).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

EVERETT, Senior Judge (concurring):

In my view, if an accused receives and relies on grossly erroneous and incompetent advice from counsel that leads him to request—and be provided—trial by court-martial rather than nonjudicial punishment under Article 15, Uniform Code of Military Justice, 10 USC § 815, he will have a Sixth Amendment claim requiring application of the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), two-pronged test.

Here, however, the advice provided by civilian counsel was competent and had as much rational basis as the advice presented by the military counsel. Thus, the Sixth Amendment claim proves to be without merit.

GIERKE, Judge (concurring in part and in the result):

I agree that appellant was not denied effective assistance of counsel. I decline to join in any suggestion that there is a statutory right to counsel in nonjudicial punishment proceedings. *See United States v. Kelly,* 45 MJ 259, 265 (1996) (Gierke, J., concurring in part and in the result).