[Nos. 64959-6; 64967-7.  En Banc.]
Argued October 29, 1997.     Decided September 3, 1998.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES E. IVIE, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent*, v. STEVE TAYLOR, *Petitioner.*

GUY, DOLLIVER, SMITH, and TALMADGE, JJ., dissent by separate opinion.

*Ronald D. Ness & Associates*, by *Ronald D. Ness*, for petitioner Ivie.

*David R. Johnson*; and *Crawford, McGilliard, Peterson, Yelish & Dixon*, by *Joanne E. Dantonio*, for petitioner Taylor.

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

SANDERS, J. — This is a direct discretionary review of driving-while-under-the-influence-of-alcohol prosecutions against two Navy enlisted men, James E. Ivie and Steve Taylor. Because both had been previously punished in a "captain's mast" proceeding before their naval commanding officer, the district court dismissed pending charges pursuant to RCW 10.43.040 which bars a criminal prosecution in Washington if another sovereign has already prosecuted the defendant for the same offense. The State, however, appealed to the superior court which reversed the dismissal. But we reverse the superior court, affirm the district court, and dismiss these redundant prosecutions.

## Facts

Defendant Ivie. In 1996, defendant Ivie was an enlisted sailor in the United States Navy. On February 27, 1996 he was stopped by a Kitsap County sheriff's deputy and cited for driving while under the influence of alcohol or drugs (DUI) in violation of RCW 46.61.502, and for driving with a suspended license in violation of RCW 46.20.342. He submitted to a breath test which indicated he was legally intoxicated. Prior to his first appearance in district court, however, defendant Ivie was brought before his commanding officer in an Article 15 nonjudicial punishment proceeding (called a captain's mast in the Navy) and was charged with drunken operation of a vehicle in violation of the UNIFORM CODE OF MILITARY JUSTICE. His commander reduced his pay grade to the next inferior rank, suspended that order, and docked him one-half pay for two months. Thereafter, he was brought before the Kitsap County District Court to answer the DUI charge and the suspended license charge

once again in state court. On his motion the district court dismissed, concluding defendant Ivie had been subjected to nonjudicial punishment under Article 15 of the UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 815, and therefore subsequent prosecution in state court was barred by Washington statute RCW 10.43.040. The State appealed to the Superior Court which reinstated the charges.

Defendant Taylor. In 1996, defendant Taylor was also enlisted in the United States Navy. On April 3, 1996, he was stopped by a Washington State Patrol Trooper in Kitsap County and was cited for DUI in violation of RCW 46.61.502. He submitted to a breath test which indicated he was legally intoxicated. Shortly thereafter the Navy conducted a captain's mast where defendant Taylor was charged with violation of UNIFORM CODE OF MILITARY JUSTICE Article 111, drunken or reckless driving. The record before us does not indicate what, if any, punishment was imposed by defendant Taylor's commanding officer. As was the case in *Ivie*, Taylor was brought before Kitsap County District Court which dismissed the criminal charge. The State appealed to the superior court where the charges were reinstated on consolidated review.

The issue is whether RCW 10.43.040 provides a defense to military personnel who have faced "nonjudicial punishment" under Article 15 of the UNIFORM CODE OF MILITARY JUSTICE, from state prosecution for a crime committed in the State of Washington. We conclude it does.

Discussion

RCW 10.43.040 prohibits a Washington prosecution if the defendant has already been prosecuted for the same offense by the federal government or another state or country. As these defendants have already been nonjudicially punished by the United States military for the same offense that they are now prosecuted for in state court, state prosecution is barred.

The single issue is whether "nonjudicial punishment"

imposed by the military against these defendants for drunk driving amounts to a "criminal prosecution" as referenced in RCW 10.43.040. That statute provides:

> Whenever, upon the trial of any person for a crime, . . . the defendant has already been acquitted or convicted upon the merits, **upon a *criminal prosecution*** under the laws of [another] state or country, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.

RCW 10.43.040 (emphasis added).

It is undisputed that the United States military qualifies as the equivalent of another state or country for purposes of this statute. *See State v. Caliguri*, 99 Wn.2d 501, 512, 664 P.2d 466 (1983). It is also undisputed that Washington would now try defendants for the identical act for which they were already punished by the military.[1] The only question remaining therefore is whether a military proceeding for "nonjudicial punishment" is equivalent to a "criminal prosecution" for purposes of this statute. If so, the present state prosecution is barred.

### Defining "Criminal Prosecution"

"Criminal prosecution" is not defined in the statute. BLACK's defines prosecution as "[a] criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime." BLACK's LAW DICTIONARY 1221 (6th ed. 1990).[2] The meaning of "criminal prosecution" must further be determined from

---

[1]The military charged and punished defendants for "[d]runken . . . operation of a vehicle" in violation of 10 U.S.C. § 911 (1994) while the present Washington prosecution is for "driving under the influence" in violation of RCW 46.61.502. These two offenses contain the same elements and proscribe the same behavior, driving a motor vehicle while drunk or while BAC is .10 or greater.

[2]WEBSTER's defines "to prosecute" as "to institute legal proceedings against; *esp*: to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1820 (1976).

the statutory context in which it is used. RCW 10.43.040 is a double jeopardy statute and "criminal prosecution" is used therein to mean a proceeding sufficient to constitute jeopardy under double jeopardy jurisprudence.

An understanding of RCW 10.43.040 requires brief discussion of dual sovereignty. Pursuant to the doctrine of dual sovereignty neither constitutional double jeopardy clause[3] is offended by successive punishments at the hands of separate sovereigns so long as each sovereign punishes the defendant but once. *See State v. Kenney*, 83 Wash. 441, 145 P. 450 (1915) (citing *State v. Coss*, 12 Wash. 673, 42 P. 127 (1895)); *Bartkus v. Illinois*, 359 U.S. 121, 136-38, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959). However, states may override the doctrine by either state constitution or statute by providing they will not prosecute a defendant who has already been prosecuted for the same offense elsewhere. *Caliguri*, 99 Wn.2d at 512; Annotation, *Conviction or acquittal in federal court as bar to prosecution in state courts for state offense based on same facts—modern view*, 6 A.L.R.4TH 802, 816-24 (1981). Our statute abrogates dual sovereignty in this jurisdiction. *Caliguri*, 99 Wn.2d at 511.

In 1909 our Legislature replaced the doctrine of dual sovereignty by statutorily extending double jeopardy protection to prohibit prosecution of a defendant who has already been prosecuted for the same offense elsewhere by a separate sovereign. LAWS OF 1909, ch. 249, § 20 (codified at RCW 10.43.040). Thereafter we have repeatedly characterized this statute as a guard against double jeopardy by separate sovereigns. *See, e.g., Caliguri*, 99 Wn.2d at 511 (Washington "rejected the dual sovereignty doctrine . . . by statute.") (construing RCW 10.43.040); *State v. Rudy*, 105 Wn.2d 921, 924, 719 P.2d 550 (1986) (RCW 10.43.040 provides "greater protection against double jeopardy."); *State v. Duncan*, 111 Wn.2d 859, 868, 765 P.2d 1300 (1989)

---

[3]The double jeopardy clause of the federal constitution provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb," U.S. CONST. amend. V, while our state's double jeopardy clause provides, "No person shall be . . . twice put in jeopardy for the same offense." CONST. art. I, § 9.

(RCW 10.43.040 is statutory "protection against double jeopardy in multiple jurisdictions."); *In re Personal Restraint of Cook*, 114 Wn.2d 802, 814, 792 P.2d 506 (1990) (citations omitted) (RCW 10.43.040 provides "statutory double jeopardy protection"); *State v. Mathers*, 77 Wn. App. 487, 489-90, 891 P.2d 738 ("This state, however, provides greater protection against double jeopardy by statute.") (citing RCW 10.43.040), *review denied*, 128 Wn.2d 1002, 907 P.2d 297 (1995).

In the leading case of *Caliguri*, 99 Wn.2d at 512-13, this court unanimously recognized RCW 10.43.040 statutorily extends double jeopardy protection to bar Washington prosecutions which follow prosecutions by other sovereigns. The issue in *Caliguri* was whether the Washington prosecution for conspiracy to commit arson was for the same "act or omission" under RCW 10.43.040 as a prior federal prosecution for racketeering based on similar acts. *Caliguri*, 99 Wn.2d at 512. Acknowledging the phrase "act or omission" is undefined in the statute, we noted the statute pertains to double jeopardy and turned to double jeopardy jurisprudence to define the term. *Id.* at 512-14. We should do the same today.

Turning back to RCW 10.43.040 the text provides Washington will not criminally prosecute if a defendant has already been criminally prosecuted elsewhere for the same offense. Because RCW 10.43.040 simply extends double jeopardy protections we read it to mean Washington will not place a defendant in jeopardy if he has already been placed in jeopardy elsewhere. "Criminal prosecution" therefore means a proceeding sufficient to invoke jeopardy under double jeopardy jurisprudence. Referencing double jeopardy jurisprudence, we note the clause prohibits "multiple punishments for the same offense." *State v. Catlett*, 133 Wn.2d 355, 362, 945 P.2d 700 (1997) (citations omitted). Thus the double jeopardy aspect of our statute focuses on whether the prior proceeding amounts to "punishment."

Meshing the dictionary definition of "criminal prosecu-

tion" with its double jeopardy basis we understand "criminal prosecution" to include a proceeding instituted under the rules of law to determine the guilt or innocence of a person accused of committing a criminal act where such proceeding threatens "punishment" under double jeopardy jurisprudence. We then test "nonjudicial punishment" by this standard to see if it is a "criminal prosecution."

### Nature of Nonjudicial Punishment

The military undoubtedly occupies its own unique position within our constitutional structure. Congress, pursuant to its power to regulate the military, enacted the UNIFORM CODE OF MILITARY JUSTICE (U.C.M.J.).[4] All military personnel are subject thereto. The U.C.M.J., under the section titled "Punitive Articles," makes criminal a long list of offenses including purely military ones such as mutiny and desertion, as well as general criminal offenses including murder, robbery, sodomy, and drunk driving. 10 U.S.C. §§ 885-922 (U.C.M.J. art. 85-122). The U.C.M.J. empowers the military authorities to impose a wide range of punishments on its service members for commission of crimes under the punitive articles including the death penalty, years of hard labor, confinement on bread and water, dishonorable discharge, and forfeiture of pay. 10 U.S.C. § 856 tbl. (U.C.M.J. art. 56).

When a member of the military allegedly commits an offense under the punitive articles of the U.C.M.J., whether on-base or off, military authorities may proceed against the service member in one of four ways: First is the general court-martial which is the most serious and includes a full blown military trial and may result in imposition of the death penalty; second is the special court-martial which is a slightly less formal military trial; third is the summary court-martial, the least-formal trial; and fourth, and the one relevant in this case, is nonjudicial punishment. 10

---

[4]The UNIFORM CODE OF MILITARY JUSTICE is located at chapter 47 of title 10 (Armed Forces) section 801 of the UNITED STATES CODE (1994).

U.S.C. § 815 (U.C.M.J. art. 15). The military authorities will select one of the four methods depending on the nature of the offense and identity of the offender.

Nonjudicial punishment is available only for "minor offenses" which are those carrying a maximum penalty of one year or less confinement and which cannot result in dishonorable discharge. 10 U.S.C. § 815(b) (U.C.M.J. art. 15(b)); MANUAL FOR COURTS-MARTIAL UNITED STATES (1995) (MCM),[5] pt. V, ¶ 1e.[6] Nonjudicial punishment may be imposed only by a commander on a member of his command.

While nonjudicial punishment is not a court-martial, precise procedure must still be followed. The accused service member must be delivered a statement of the charges with reference to the provision of the U.C.M.J. allegedly violated, a summary of the information upon which the charge is based, and a statement of rights. MCM, pt. V, ¶ 4a.(2), (3). Once charges for nonjudicial punishment are delivered, the service member may demand a court-martial rather than face nonjudicial punishment for the offense. 10 U.S.C. § 815(a) (U.C.M.J. art. 15(a)).[7] At this point the service member may defend on the grounds he has already been punished for the same offense in state or federal court as a state prosecution is a total bar to subsequent nonjudicial punishment under military law. MCM, pt. V, ¶ 1f.(5). This indicates military law regards a state prosecution and nonjudicial punishment as equally final dispositions of the criminal offense so that one will bar the other.

---

[5]The MCM is promulgated by the President pursuant to 10 U.S.C. § 121 and is governing authority in nonjudicial punishment proceedings.

[6]The distinction between minor and major offenses is similar to the distinction in Washington law between felonies which may carry more than one year in prison and misdemeanors which carry a maximum of one year in prison. William R. Salisbury, Comment, *Nonjudicial Punishment Under Article 15 of the Uniform Code of Military Justice: Congressional Precept and Military Practice*, 19 SAN DIEGO L. REV. 839, 845 (1982) (hereinafter Salisbury, *Nonjudicial Punishment Under Article 15 of the UCMJ*). Drunk driving carries a maximum penalty of six months and is therefore a minor offense.

[7]This election, however, is not available to sailors assigned to a sea vessel. 10 U.S.C. § 815(a) (U.C.M.J. art. 15(a)). Both defendants were officially assigned to a sea vessel and were unable to make such election.

At the nonjudicial proceeding itself the accused has the right to appear in person, be "accompanied by a spokesperson" (who may be a civilian lawyer), examine all documents and physical evidence, present a defense, and present available witnesses in an open proceeding. MCM, pt. V, ¶ 4c.(1). To impose nonjudicial punishment the commander must find the accused service member guilty beyond a reasonable doubt. CHARLES A. SHANOR & L. LYNN HOGUE, MILITARY LAW IN A NUTSHELL 109 (2d ed. 1996). A commander may impose a variety of sanctions as nonjudicial punishment including a reduction in rank, 30 days' correctional custody, 3 days' confinement on bread and water, 60 days of restricted movement, 45 days of extra duties, forfeiture of future pay, and a formal military admonition or reprimand. MCM, pt. V, ¶ 5b.

After a finding of guilt the service member may appeal, in writing, to a superior authority. MCM, pt. V, ¶ 7. The superior authority must then refer the case to a judge advocate for legal review. *Id.* at ¶ 7e.

The ultimate finding of guilt and imposition of punishment remains with the service member and may be used to justify subsequent discharge and to enhance a sentence at an unrelated future court-martial.[8] William R. Salisbury, Comment, *Nonjudicial Punishment Under Article 15 of the Uniform Code of Military Justice: Congressional Precept and Military Practice*, 19 SAN DIEGO L. REV. 839, 861-62 (1982); *United States v. Mack*, 9 M.J. 300, 319 (C.M.A. 1980).

Under military law nonjudicial punishment is final. A service member nonjudicially punished for a minor offense may not be tried again for the same offense whether by nonjudicial punishment or by court-martial. The MCM provides:

> *Double punishment prohibited.* When nonjudicial punishment has been imposed for an offense, punishment may not again be imposed for the same offense under Article 15.

---

[8]Indeed, in the present case it appears both defendants were discharged as a result of their drunk driving offense.

MCM, pt. V, ¶ 1f.(1).[9]

In sum, nonjudicial punishment is a formalized procedure to fully and finally adjudicate and dispose of minor offenses in the military.

## Application

■■ Returning to the definition of "criminal prosecution," it is evident that nonjudicial punishment is indeed a final adjudication of guilt or innocence for a criminal violation with attendant punishment administered by competent authorities. Thus, nonjudicial punishment necessarily constitutes criminal prosecution under our statute.

Under double jeopardy jurisprudence we consider whether Congress affixed a criminal/punitive or civil/remedial label to the proceeding. *Catlett*, 133 Wn.2d at 365 (citing *United States v. Ward*, 448 U.S. 242, 248, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980)). If Congress gave a punitive label then the proceeding invokes jeopardy. Here Congress denominated the entire proceeding "nonjudicial ***punishment***" quite unambiguously, indicating the proceeding is "punishment." This should end the inquiry.

But going even further we note Congress specified nonjudicial punishment is used only for offenses "under the punitive articles" of the U.C.M.J. MCM, pt. V, ¶ 1e. The punitive articles of the U.C.M.J. all proscribe criminal conduct[10] and every offense under the punitive articles is punishable by a term of confinement.[11] The fact that " 'the behavior to which [the sanction] applies is already a crime' " further indicates the proceeding constitutes jeop-

[9]Nor may a second punishment be imposed by court-martial following a nonjudicial punishment for the same offense. Rule for Courts-Martial 907(b)(2)(D)(iv) (a court-martial is barred by "[p]rior punishment under Articles 13 or 15 for the same offense, if that offense was minor."); *United States v. Williams*, 28 C.M.R. 181, 10 U.S.C.M.A. 615 (1959).

[10]*See, e.g.* 10 U.S.C. § 918 (U.C.M.J. art. 118) (murder), 10 U.S.C. § 922 (U.C.M.J. art. 122) (robbery), and 10 U.S.C. § 911 (U.C.M.J. art. 111) (drunk driving).

[11]*See* 10 U.S.C. § 856 (U.C.M.J. art. 56) (drunk driving punishable by up to six months' confinement).

ardy. *In re Personal Restraint of Young*, 122 Wn.2d 1, 21, 857 P.2d 989 (1993) (citations omitted). Punishment which may be imposed nonjudicially includes confinement, confinement on bread and water, restricted movement, a formal reprimand or admonition which Congress provides is "considered to be punitive" (MCM, pt. V, ¶ 5c.(1)), and 45 days' extra duties which is "assigned as punishment," (MCM, pt. V, ¶ 5c.(6)). Any proceeding which threatens[12] to impose imprisonment for a criminal violation surely constitutes jeopardy.

We reject the suggestion that even if double jeopardy principles apply here nonjudicial punishment would not qualify as jeopardy because some might characterize nonjudicial punishment as a civil proceeding, not a punitive criminal one.[13] Unless double jeopardy has lost all meaning a proceeding which threatens to impose imprisonment for a criminal violation certainly places the defendant in jeopardy. If going to jail for a criminal violation is not punishment, what is? By all indicia nonjudicial punishment constitutes a "criminal prosecution" for purposes of our statute.

The State relies primarily on *Middendorf v. Henry*, 425 U.S. 25, 96 S. Ct. 1281, 47 L. Ed. 2d 556 (1976). There the defendant service member was subject to, and actually sentenced to, confinement at hard labor pursuant to a summary court-martial for a violation of the U.C.M.J. On appeal defendant challenged his conviction arguing he was

---

[12]Jeopardy does not require that the defendant actually have been punished. Indeed a prior trial resulting in acquittal still constitutes jeopardy. Rather, the emphasis is on whether defendant might be punished. Etymologically "jeopardy" derives "from the French *jeu-perdre*, a 'game' that one *might* 'lose.' " Akhil Reed Amar, *Essay, Double Jeopardy Law Made Simple*, 106 YALE L.J. 1807, 1810 (1997) (second emphasis added).

[13]We note military law provides for "administrative corrective measures" such as withholding of privileges and censures of the type which would not constitute jeopardy. MCM, pt. V, ¶ 1e., 1g. ("[a]dministrative corrective measures are not punishment"). Such corrective measures may include discharge from the service for bad conduct or loss of driving privileges. Salisbury, *Nonjudicial Punishment Under Article 15 of the UCMJ, supra* at n.6. In the present case in addition to facing nonjudicial punishment the defendants were subjected to administrative corrective measures including ejection from the Navy.

denied the right to counsel at the proceeding. The issue was whether he was entitled to counsel. The Supreme Court held he was not. The Court understood the military's mission often necessitates that commanders be able to impose swift punishment[14] to dispose of minor offenses and to maintain unit discipline.[15] But the intervention of lawyers in every such proceeding would disrupt the military mission. However, the general rule is that counsel must be provided in every criminal prosecution where confinement of any duration is imposed. *Scott v. Illinois*, 440 U.S. 367, 373, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). The Court sidestepped this requirement by declaring that a summary court-martial or nonjudicial punishment is not a criminal conviction for **right to counsel** purposes. *Middendorf*, 425 U.S. at 42, 48.

Thus, *Middendorf* and its progeny are good authority for the proposition that those in the military may not be entitled to counsel and other procedural rights which would be constitutionally indispensable in a nonmilitary setting. *See Middendorf*, 425 U.S. at 46 (" '[M]ilitary tribunals have not been and probably never can be constituted in such way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts.' ") (quoting *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S. Ct. 1, 100 L. Ed. 8

---

[14]During passage of the U.C.M.J. a Navy spokesman insisted before committee that "swift, certain punishment was needed to make article 15 effective." Salisbury, *Nonjudicial Punishment Under Article 15 of the UCMJ*, at 866. Some suggest Congress granted the Navy its request. *See id.* at 864 (commanders aboard Navy ships are empowered to inflict "harsh, immediate punishment—sometimes with serious or even fatal consequences for the offending sailor.").

[15]The *Middendorf* court explained the critical factor:

"[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise. But trial of soldiers to maintain discipline is merely incidental to an army's primary fighting function. To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served."

425 U.S. at 46 (quoting *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S. Ct. 1, 100 L. Ed. 8 (1955)).

(1955)). However this line of cases does not stand for the proposition that nonjudicial punishment is not a form of criminal punishment. Simply put, the military affords its members less procedure than civilians are afforded under the federal and state constitutions. Yet this diminution of trial rights hardly means military personnel are not "punished" nonjudicially—they are just punished more quickly.

RCW 10.43.040 focuses on whether the defendant was punished for the same offense elsewhere. One may contrast this with RCW 9.94A.030(9) as interpreted in *State v. Morley*, 134 Wn.2d 588, 952 P.2d 167 (1998). There the issue was procedure, not punishment, specifically whether a prior military court-martial conviction was sufficiently trustworthy from a procedural perspective to count as a valid conviction for purposes of enhancing a current Washington prosecution. *Morley*, 134 Wn.2d at 616. *Cf. State v. Chervenell*, 99 Wn.2d 309, 311, 662 P.2d 836 (1983) (constitutionally invalid prior convictions may not be counted in determining habitual criminal status). In *Morley* the majority discussed the procedure afforded by the U.C.M.J., holding despite procedural differences between a court martial and a Washington trial a court martial conviction is sufficiently trustworthy. *Morley*, 134 Wn.2d at 617-18. The *Morley* dissent agreed that court martial convictions may be trustworthy but argued a higher standard was statutorily required if the conviction was to be used to enhance a criminal sentence in Washington, 134 Wn.2d at 622 (Johnson, J., dissenting), relying on RCW 9.94A.030(9) which mandates the prior conviction comport with the procedural requirements set out in Title 10 RCW, the Washington code of criminal procedure, before it may be considered. *Morley*, 134 Wn.2d at 624. Neither the majority nor dissenting position in *Morley* conflicts with the approach taken by this opinion today.

The MCM notes that in cases where a state and the United States military both can exercise jurisdiction over punishing the same criminal acts, "the determination

which agency shall exercise jurisdiction should normally be made through consultation or prior agreement between appropriate military officials and civilian authorities." Rule for Courts-Martial 201(d), discussion. But allowing both to punish the offender is not an alternative under our statute.[16]

### Conclusion

RCW 10.43.040 bars a Washington prosecution if another jurisdiction including the military has already criminally prosecuted the defendant for the same offense. Here the military has already done exactly that. Nonjudicial punishment fits squarely within the dictionary definition of "criminal prosecution" as it is a final adjudication of guilt or innocence of a criminal charge and constitutes jeopardy under double jeopardy analysis as it unquestionably is intended to be punishment.

Therefore, RCW 10.43.040 mandates dismissal of the current Washington charges against defendants and it is so ordered.

DURHAM, C.J., and JOHNSON, MADSEN, and ALEXANDER, JJ., concur.

GUY, J. (dissenting) — In these cases we are required to decide whether the imposition of nonjudicial punishment on a serviceman by his commanding officer at a captain's mast is a "criminal prosecution" so as to preclude subsequent prosecution by the State of Washington. Instead of looking to congressional intent and federal law to determine whether an Article 15 nonjudicial punishment proceeding is a criminal prosecution, the majority looks to the dictionary. The majority ignores all relevant law and changes the

---

[16]But to repeat, the problem of double punishment arises only if the military punishes first because in cases where the state punishes first, the military will honor the state prosecution as final and will not try the offender, whether by nonjudicial punishment or otherwise.

question from whether the military proceeding is a criminal prosecution to whether the proceeding allows a commanding officer to impose punishment. This is faulty analysis, and I therefore respectfully dissent.

The issue before us is whether a military Article 15 proceeding is "a criminal prosecution" within the meaning of our state statute. The parties all agree that double jeopardy does not bar subsequent prosecution and that the defendants' only potential defense lies in RCW 10.43.040, which provides:

> Whenever, upon the trial of any person for a crime, it appears that the offense was committed in another state or country, under such circumstances that the courts of this state had jurisdiction thereof, and that *the defendant has already been acquitted or convicted upon the merits, upon a criminal prosecution under the laws of such state or country*, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.

(Emphasis added.)

The words of our statute are clear; only a former "criminal prosecution" under the laws of another jurisdiction serves as a defense to a subsequent prosecution. The state prosecutions for driving while intoxicated in these cases are therefore barred only if the captain's masts were criminal prosecutions.

In order to determine if an Article 15 military proceeding is a "criminal prosecution," I would look to congressional intent and to federal law on the subject. The Constitution expressly authorized Congress to make the rules for the government and regulation of the land and naval forces. U.S. Const. art. I, § 8; *Middendorf v. Henry*, 425 U.S. 25, 43, 96 S. Ct. 1281, 47 L. Ed. 2d 556 (1976). Scrutiny of United States Supreme Court authority, other federal court precedent, and the congressional history accompanying the enactment of the current Article 15, all lead me to conclude that nonjudicial punishment imposed by a commanding officer under Article 15 of the UNIFORM CODE OF MILITARY

JUSTICE was not intended to, and does not, constitute "criminal prosecution."

Under the UNIFORM CODE OF MILITARY JUSTICE, there are four ways of dealing with offenses committed by military personnel. The general court martial under Article 18 (10 U.S.C § 818) and the special court martial under Article 19 (10 U.S.C. § 819) are formal, adversarial criminal proceedings. However, the summary court martial under Article 20 (10 U.S.C. § 820) and nonjudicial punishment by a commanding officer under Article 15 (10 U.S.C. § 815) are nonadversarial proceedings. *See, e.g., Zellers v. United States*, 682 A.2d 1118, 1122 (D.C. 1996). The summary court martial and the Article 15 nonjudicial punishment are regarded as noncriminal in nature. *E.g., Fairchild v. Lehman*, 814 F.2d 1555, 1558 (Fed. Cir. 1987).

The Supreme Court has explained that "Article 15 punishment, conducted personally by the accused's commanding officer, is an administrative method of dealing with the most minor offenses." *Middendorf*, 425 U.S. at 31-32; *Parker v. Levy*, 417 U.S. 733, 750, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974). In *Middendorf*, military personnel brought an action challenging the authority of the military to try them and sentence them to confinement after a summary court martial without providing the assistance of counsel. The Court held that the fact that confinement can be imposed in a military environment after a summary court martial did not make it a "criminal prosecution" and concluded that the summary court martial is not a "criminal prosecution" for purposes of the Fifth or Sixth Amendment right to counsel. *Middendorf*, 425 U.S. at 42, 48. The Supreme Court held that the fact that a proceeding may result in the loss of liberty does not necessarily mean the proceeding is a criminal prosecution. *Middendorf*, 425 U.S. at 37. Even the dissent, which would have held that a summary court martial is a criminal proceeding, agreed that the less serious Article 15 nonjudicial punishment is not a criminal conviction. The dissenters noted that Article 15 nonjudicial punishment can be speedily imposed by a commander and does not carry with it the stigma of a criminal

conviction. *Middendorf*, 425 U.S. at 58 n.9, 64 (Marshall, J., dissenting).

The fundamental character of an Article 15 nonjudicial proceeding is that it is not a trial by court martial. *Dumas v. United States*, 620 F.2d 247, 250 (Ct. Cl. 1980); *Jamison v. United States*, 5 Cl. Ct. 747, 750 (1984), *aff'd*, 765 F.2d 159 (1985). Numerous federal cases have held that an Article 15 nonjudicial punishment proceeding is not a criminal prosecution. *E.g.*, *United States v. Marshall*, 45 M.J. 268, 271 (C.A.A.F. 1996); *Fairchild*, 814 F.2d at 1558; *Varn v. United States*, 13 Cl. Ct. 391, 396 (1987); *Dumas*, 620 F.2d at 251; *Bowes v. United States*, 645 F.2d 961 (Ct. Cl. 1981); *Cole v. United States*, 228 Ct. Cl. 890 (1981); *Jamison*, 5 Cl. Ct. at 750; *Cochran v. United States*, 1 Cl. Ct. 759, 764 (1983), *aff'd*, 732 F.2d 168 (1984); *Cappella v. United States*, 624 F.2d 976, 980 (Ct. Cl. 1980). No cases have been cited or located which hold to the contrary.

The legislative history accompanying 10 U.S.C. § 815 states that Article 15 nonjudicial punishment is noncriminal in character. S. REP. No. 87-1911, at 2-4 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2379. The legislative history explains the purpose of the 1962 amendments to Article 15:

> The purpose of the proposed legislation is to amend article 15 of the Uniform Code of Military Justice to give increased authority to designated commanders in the Armed Forces to impose nonjudicial punishment. Such increased authority will enable them to deal with minor disciplinary problems and offenses without resort to trial by court-martial.

1962 U.S.C.C.A.N. at 2380.

The history further explains:

> Under existing law, *article 15 of the Uniform Code of Military Justice provides a means whereby military commanders deal with minor infractions of discipline without resorting to criminal law processes*. Under this article commanding officers can impose specified limited punishments for minor offenses and infractions of discipline. This punishment is referred to as "nonjudicial" punishment. *Since the punish-*

*ment is nonjudicial, it is not considered as a conviction of a crime and in this sense has no connection with the military court-martial system.*

. . . .

. . . It has been acknowledged over a long period that military commanders should have the authority to impose nonjudicial punishment as an essential part of their responsibilities to preserve discipline and maintain an effective armed force.

1962 U.S.C.C.A.N. at 2380-81 (emphasis added).

The legislative history also describes the need for additional Article 15 powers and highlights Congress' intent to make Article 15 a noncriminal proceeding for the protection of service people:

The Department of Defense has stated that problems adversely affecting morale and discipline have been created in the Armed Forces because of the inadequate powers of commanding officers to deal with minor behavioral infractions without resorting to the processes of the military court-martial system. The limited nonjudicial punishment authority has proved unsatisfactory to commanders in the field. The alternative solution has been to impose a trial by summary or special court-martial. In most cases, a court-martial results in a serious impairment of the services of an officer or enlisted man. Such a conviction stigmatizes a person with a criminal conviction on his record, which not only remains throughout his military career, but follows him into civilian life. It may well interfere with his civilian job opportunities, as for example, when he is required to show on a questionnaire whether he has ever been convicted, and it may adversely reflect on him if he is involved in difficulty with civilian law-enforcement agencies. The bill, by providing increased authority for nonjudicial punishment, will enable commanders to deal promptly and efficiently with problems of discipline. At the same time, the increased nonjudicial authority should permit the services to reduce substantially the number of court-martials for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned.

1962 U.S.C.C.A.N. at 2381-82.

A number of courts have relied on this congressional history to conclude that Article 15 nonjudicial punishment is not a criminal prosecution. *See Dumas*, 620 F.2d at 251; *Cochran*, 1 Cl. Ct. at 764; *Jamison*, 5 Cl. Ct. at 750.

In light of this clear intention on the part of Congress that Article 15 proceedings be noncriminal in nature, I disagree with the majority's conclusion that a subsequent prosecution is barred by double jeopardy under this Court's previous case law. A majority of this Court in *In re Personal Restraint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993), explained that the categorization of a particular statute as civil or criminal is largely a matter of statutory construction. The first inquiry is whether Congress, *in establishing the penalizing mechanism*, indicated either expressly or impliedly a preference for the civil or criminal label. We recognized that there would be a "penalizing mechanism" but not all punishment is criminal for purposes of double jeopardy. The fact that Congress labeled Article 15 nonjudicial punishment does not address the issue; the inquiry is whether Congress intended it be "criminal." It is clear that Congress did not intend Article 15 proceedings to be criminal. Therefore, I believe the majority opinion is at odds with this Court's and the United States Supreme Court's articulation of the test for double jeopardy. *See In re Young*, 122 Wn.2d at 18-19; *Kansas v. Hendricks*, 521 U.S. 346, 361-62, 117 S. Ct. 2072, 2081-82, 138 L. Ed. 2d 501 (1997) (the categorization of a particular proceeding as civil or criminal is first of all a question of statutory construction; the legislature's manifest intent will be rejected only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the legislative intention to deem it civil); *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (disavowing the double jeopardy method of analysis used in *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989) and reaffirming that the first inquiry is whether Congress intended

the proceeding to be civil or criminal in nature). The majority ignores the clear statement by Congress that it intended Article 15 proceedings to be noncriminal in character. *See* Majority at 183. This is in sharp contrast to this Court's approach in *In re Young*, 122 Wn.2d 1.

I find the majority's discussion of the double jeopardy bar created by an Article 15 proceeding under military law to be incomplete. The majority states that "Under military law nonjudicial punishment is final" and "[n]or may a second punishment be imposed by court-martial following a nonjudicial punishment for the same offense." Majority at 182 & 183 n.9. These statements are much too broad and are misleading. They are true only if the prior punishment was for a minor offense. What the majority fails to point out is that nonjudicial punishment does not always preclude subsequent court-martial of a servicemember. The federal court has explained that Congress did not intend for imposition of nonjudicial punishment to preclude the subsequent court-martial of a servicemember accused of a serious offense. *United States v. Pierce*, 27 M.J. 367, 368 (C.A.A.F. 1989); *United States v. Marshall*, 45 M.J. 268, 271 (C.A.A.F. 1996); *United States v. Dire*, 46 M.J. 804 (C.A.A.F. 1997). A servicemember would be given credit for any nonjudicial punishment suffered if he had been subject to Article 15 punishment and subsequently court-martialed for the same offense. However, the nonjudicial punishment is not, as the majority claims, "final under military law" and the statement of the majority that a second punishment may not be imposed by court-martial following a nonjudicial punishment for the same offense is inaccurate.

The purpose of Article 15 nonjudicial punishment is to maintain discipline in the armed forces and to avoid bringing criminal charges against a servicemember when the less serious Article 15 proceeding by the commanding officer can achieve the result of maintaining the discipline necessary in a fighting force. Congress did not intend Article 15 proceedings to be criminal prosecutions, and the federal courts have construed them to be noncriminal in

character. Therefore, I would conclude that the defendants were not previously criminally prosecuted when they received nonjudicial punishment from their commanding officers. Military commanders have the responsibility to maintain good order and discipline in their commands. They should be able to impose the flexible punishment available at a captain's mast without affecting the right of this State to call citizens to answer for crimes committed in the state of Washington. I do not believe RCW 10.43.040 was intended to provide a defense against prosecution after such a proceeding. I do not read that statute to immunize a military person from civilian criminal prosecution because of the imposition of Article 15 nonjudicial punishment by his or her commanding officer.

I also find the majority opinion in this case somewhat at odds with our conclusion in *State v. Morley*, 134 Wn.2d 588, 952 P.2d 167 (1998). A majority of this Court rejected the position of the dissent in *Morley* which would have held that a prior general military court-martial conviction could not be used as a part of a defendant's criminal history when a judge sentences a criminal defendant in Washington. The majority in this case now holds that a military proceeding is a criminal prosecution which bars a subsequent criminal prosecution by the State. I find it incongruent that military proceedings <u>cannot</u> be used as criminal history for purposes of sentencing criminal defendants, but they <u>are</u> criminal proceedings for the purpose of barring a subsequent criminal prosecution by the State of Washington.

I perceive the majority opinion to be both legally unsound and to have unfortunate practical results. Under the majority, any Article 15 discipline imposed on a servicemember by his or her commanding officer will bar criminal prosecution for a crime committed off of the military base against the citizens of Washington. In Mr. Ivie's case, he was docked one-half pay for two months, and even though he was endangering Washington citizens by driving off the military base with a suspended driver's license while intoxicated, the State is absolutely barred from prosecuting

him for these crimes. I do not think this is what was intended by our Legislature in barring prosecution after a prior criminal prosecution. In light of this Court's majority decision, legislators should exercise their power to further clarify what I believe was their original intent: that only prior criminal prosecutions, which do not include Article 15 military proceedings, will bar a subsequent criminal prosecution in this state.

DOLLIVER, SMITH, and TALMADGE, JJ., concur with GUY, J.