# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40351

————————————

## UNITED STATES
*Appellee*

v.

## Andrew M. DADDARIO
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 1 December 2023

————————————

*Military Judge*: Matthew P. Stoffel.

*Sentence*: Sentence adjudged 24 May 2022 by GCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 18 August 2022: Dishonorable discharge, confinement for 24 months, reduction to E-1, and a reprimand.

*For Appellant*: Major David L. Bosner, USAF.

*For Appellee*: Colonel Naomi P. Dennis, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Captain Olivia B. Hoff, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, DOUGLAS, and WARREN, *Appellate Military Judges*.

Judge WARREN delivered the opinion of the court, in which Senior Judge RICHARDSON, and Judge DOUGLAS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

WARREN, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of two specifications of assault consummated by a battery (one against his spouse SD and one against his intimate partner KR) and two specifications of domestic violence (one against his spouse SD and one against another intimate partner TD), in violation of Articles 128 and 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 928b.[1,2] The military judge sentenced Appellant, within the agreed-upon sentencing parameters established in Appellant's plea agreement, to a dishonorable discharge, confinement for 24 months, reduction to the grade of E-1, and a reprimand.[3] The convening authority took no action on the findings or sentence.

Appellant raises three issues on appeal, which we have consolidated as follows: (1) whether the military judge erred when he admitted a written victim unsworn statement from KR during the sentencing hearing; and (2) whether trial defense counsel was ineffective by (a) failing to object to the admission of that statement when KR was not physically present to offer it at the court-martial, (b) referencing the wrong law in his clemency memorandum to the convening authority, and (c) advising Appellant, after sentence was adjudged in his court-martial, that Appellant would "automatically" earn two-for-one post-trial confinement credit for each day spent in the Weber County Jail.[4]

Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

---

[1] The charged time frame for the assault consummated by a battery against SD was "on or about 14 January 2018." As such, the applicable punitive article is found in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless indicated otherwise, all other references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] The charged time frame for both domestic violence convictions occurred after 1 January 2019; as such, Article 128b, UCMJ, to the 2019 *MCM*, applies. *See* National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, § 532(a)–(b), 132 Stat. 1636, 1759–60 (2018).

[3] A total of six charges consisting of 11 specifications were referred against Appellant. Pursuant to the plea agreement, the convening authority dismissed all remaining charges and specifications with prejudice after the entry of sentence for the offenses to which Appellant pleaded guilty.

[4] Issue (3) was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant physically assaulted his spouse and two intimate partners on three separate occasions between January 2018 and August 2020. First, Appellant kicked his then wife SD in the face in January 2018 (Specification 1 of Charge IV) and pointed a firearm at her head while he held his finger on the trigger for 15 seconds in December 2019 (Specification 1 of Charge V)—the latter incident causing her to have a panic attack. On or about 5 April 2020, Appellant strangled his then ex-girlfriend TD after Appellant invited TD to his house claiming he was having suicidal ideations (Specification 3 of Charge V).[5] Once TD arrived, Appellant sought to reinitiate their brief dating relationship. When she declined, Appellant strangled her with a force of "7" on a 1-to-10 scale and with such force that she struggled to get free of his choke hold. As she struggled to break free, TD heard a "popping noise" in her left ear followed by pain that persisted for three to four weeks. Finally, over the course of one evening in August 2020, Appellant forcefully grabbed and held his then girlfriend KR (a civilian) by the wrists four separate times after an argument where she informed Appellant that she wanted to end their three-month-long dating relationship. The wrist grabbing occurred in conjunction with Appellant repeatedly holding KR on his bed as she attempted to leave the house (Specification 3 of Charge IV).

On 18 May 2022, Appellant entered into a plea agreement and agreed to plead guilty to Specifications 1 and 3 of Charge IV and Specifications 1 and 3 of Charge V. In exchange for his guilty pleas to the four specifications, the convening authority and Appellant agreed to a dishonorable discharge and agreed to confinement limitations. The plea agreement specified a sentence limitation of no less than 4 months and no more than 6 months for Specification 1 of Charge IV, and no less than 12 months and no more than 24 months for each of the remaining guilty-plea offenses, with all terms of confinement to run concurrently. There were no other limitations on the sentence.

## II. DISCUSSION

### A. Victim Impact Statement

Appellant contends that the military judge committed plain error when he did not *sua sponte* exclude KR's entire written victim unsworn statement because neither KR nor an "authorized representative" was physically present at the court-martial to deliver her statement during presentencing proceedings. For the first time on appeal, Appellant argues that a victim's right to be reasonably heard is tethered to the physical presence of the crime victim or designee at the presentencing proceeding pursuant to Rule for Courts-Martial

---

[5] TD was an active-duty military servicemember at the time of this incident.

(R.C.M.) 1001(a)(3)(A). Appellant further argues that even if physical presence of the victim was not required, the military judge ought still to have refused admission of KR's victim unsworn statement at sentencing because surrounding circumstances adduced at trial failed to evince KR's clear intent to have it offered at Appellant's court-martial. We disagree. Instead, we hold that Appellant waived this issue when his trial defense counsel made a knowing and tactical decision *not* to object upon these grounds at trial when given an opportunity to do so. Further, we choose not to pierce that waiver.

### 1. Additional Background

The military judge received a total of three victim unsworn statements at trial, one each from SD, TD, and KR. But whereas both SD and TD were represented by victims' counsel, KR was not. SD's counsel offered SD's written victim impact statement as a court exhibit on her behalf and SD read it verbatim for the court. TD's counsel admitted TD's written victim impact statement as a court exhibit on her behalf, but neither she nor her counsel read it verbatim for the court. Trial counsel offered KR's four-page, signed and dated victim impact statement to the court-martial. Given the physical absence of KR, prior to admitting KR's victim unsworn statement, the military judge asked if there was "something that would reflect a desire that [KR] be heard in this proceeding through this written statement[.]" Trial counsel then provided Appellate Exhibit III: an email correspondence between trial counsel and KR on 6 May 2022 containing KR's submission of her typed, four-page, unsworn statement as an attachment. That email correspondence reflected trial counsel expressly advising KR of the trial date, plea negotiations, and of KR's right to submit a victim unsworn statement.

In transmitting her written victim unsworn statement to trial counsel, KR relayed both her determination to write it and her fear in submitting it. The entirety of KR's brief email transmittal to trial counsel reads:

> Hello [trial counsel],
>
> *Here is the statement for this case.* Let me know if you could access the document.
>
> Would [Appellant] read my statement? I would be extremely uncomfortable if he can. I just don't want him to come for me. I [had] been putting this off when we first talk[ed] about it because of my experiences I have with him. We left [o]n really horrible terms. *I knocked it out to rip off the band-aide* [sic]. I know there is stuff in place for that not to happen but it scares me to the core to [sic] the possibility.

(Emphasis added).

Trial defense counsel raised no objection to how KR's statement was provided to the court (*i.e.*, trial counsel physically delivering it), nor any objection based on KR's absence in the courtroom. In his post-trial affidavit concerning this issue, Appellant's circuit defense counsel, Major (Maj) AB, explains:

> If I were to object, I believed that the legal office could and would find a way to correct the foundational defects mentioned by appellate defense counsel. If the legal office were to in fact provide live testimony or additional foundation, such testimony would be more impactful than the unsworn statement as provided.

Instead, the only objections to KR's written victim unsworn statement at trial concerned some discrete objections to the substance of the statement. To resolve those objections, trial counsel and trial defense counsel agreed to redact some portions of the unsworn statement. After noting the resolution of those objections on the record and without further objection, the military judge admitted KR's victim unsworn statement. Trial counsel did not read KR's written victim unsworn statement into the record.

Sentencing arguments by both trial counsel and trial defense counsel focused primarily on the stipulated facts and Appellant's statements during his guilty plea inquiry. Trial counsel made little use of KR's victim impact statement—it received a passing mention consisting of only three transcribed lines of trial counsel's sentencing argument that spanned 111 lines total.[6] In the end, the military judge sentenced Appellant to the minimum period of confinement permitted under the plea agreement for the offense against KR: 12 months.

### 2. Law

#### a. *Waiver*

When an appellant does not raise an objection to the admission of evidence at trial, we first must determine whether the appellant waived or forfeited the objection. *See United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011). "'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (additional citation omitted)). While appellate courts ordinarily do not ascribe waiver based upon mere failure to object, a *purposeful decision* not to object, when cognizant of the underlying issue, may constitute waiver. *United States*

---

[6] The three lines read: "Your Honor, in her statement, [KR] again talks about the small amount of physical pain of her wrists being held and how it left red marks, but she goes much deeper into the mental anguish that this caused, how to this day she's still terrified of [Appellant]."

*v. Davis*, 79 M.J. 329, 331–32 (C.A.A.F. 2020) (holding where appellant does not just fail to object but rather affirmatively declines to object to the military judge's instructions, and offers no additional instructions, despite counsel's knowledge of applicable precedents, appellant waives all objections to the instructions); *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017) (holding that appellant's failure to object to admission of his confession constituted waiver); *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (holding that appellant's entry into a stipulation of expected testimony at trial expressly waived objection that witness be physically produced for trial, and to the substance of the stipulation).

If the appellant waived the objection, then the appellant is "preclude[d] . . . from raising the issue before either the Court of Criminal Appeals or [the United States Court of Appeals for the Armed Forces (CAAF)];" however, we still have an affirmative obligation under Article 66(d), UCMJ, 10 U.S.C. § 866(d), to examine the entire record to determine whether "to leave an [appellant's] waiver intact or to correct the error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016). That said, despite this authority "we will only ignore waiver in the most deserving cases." *United States v. Blanks*, No. ACM 38891, 2017 CCA LEXIS 186, at *22 n.11 (A.F. Ct. Crim. App. 17 Mar. 2017) (unpub. op.), *aff'd*, 77 M.J. 239 (C.A.A.F. 2018).

### b. Plain Error

Where a discrete objection was not waived, but rather merely forfeited, then a plain error standard of review applies. *See United States v. Tyler,* 81 M.J. 108, 113 (C.A.A.F. 2021) ("While the military judge is the gatekeeper for unsworn victim statements, an accused nonetheless has a duty to state the specific ground for objection in order to preserve a claim of error on appeal."). Thus, for forfeited objections at trial, we review claims of erroneous admission of a victim unsworn statement for plain error. *United States v. Halter*, No. ACM S32666 (f rev), 2022 CCA LEXIS 254, at *10–11 ((A.F. Ct. Crim. App. 4 May 2022) (unpub. op.). Under the plain error standard, an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* at *11 (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)).

In assessing for possible error, we review de novo a military judge's interpretation of R.C.M. 1001(c) as a question of law. *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citation omitted). If there is plain error in the admission of a victim statement under R.C.M. 1001, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Id.* at 384 (citation omitted). When determining whether an error had a substantial influence on a sentence, this court considers the following four factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the

materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017). An error is less likely to be prejudicial if the fact was already obvious from the other evidence presented at trial. *See United States v. Cunningham*, 83 M.J. 367, 372 (C.A.A.F. 2023) (first citing *United States v. Edwards*, 82 M.J. 239, 241 (C.A.A.F. 2022), and then citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007) (quoting *United States v. Cano*, 61 M.J. 74, 77–78 (C.A.A.F. 2005) (noting error likely to be harmless where evidence concerned "would not have provided any new ammunition")) (affirming a finding of no prejudice where vast majority of contents of improperly admitted victim impact statement were already presented through admissible trial and presentencing evidence).

### 3. Analysis

This case initially calls upon us to first determine if Appellant waived his objections to the admission of KR's unsworn statement. Second, assuming we were to reach the merits of the issue, Appellant's assignment of error presents two discrete inquiries: (1) whether Article 6b, UCMJ, 10 U.S.C. § 806b, or R.C.M. 1001(c), requires a victim to be physically present at a court-martial in order to exercise the reasonable right to be heard, and (2) whether it was error for trial counsel to physically deliver KR's independently drafted victim unsworn statement.

We conclude that Appellant waived the issue he now wishes to assert for the first time on appeal, namely: whether there was inadequate foundation for KR's unsworn statement because she was not physically present. Trial defense counsel affirmed under oath in their post-trial declarations that they made a purposeful and tactical decision not to object to KR's absence from the court-martial to avoid a more compelling form of her statement from being offered, namely: KR potentially delivering the statement telephonically where the emotional impact of the statement would likely be enhanced. Whatever the tactical merits of that decision (discussed at Section II.B, *infra*), that was not a failure to recognize the issue by trial defense counsel—it was an affirmative decision not to object.

Our conclusion is the same whether Appellant's counsel correctly understood the applicable law or not. Circuit defense counsel's declaration demonstrates that both he and appellate defense counsel believed that a crime victim must be physically present to exercise her right to be reasonably heard: "I believed that the legal office could and would find a way to correct the *foundational defects* mentioned by appellate defense counsel." (Emphasis added). Even assuming Appellant's counsel are incorrect (*see* analysis at Section II(B)(3), *infra*), that does not change the fact that Appellant's trial defense counsel "intentionally relinquished" what they perceived to be a "known right."

When specifically queried by the military judge as to whether the Defense had any objections to KR's written victim unsworn statement, trial defense counsel made a tactical decision not to object based on KR's absence at trial or any purported lack of clear intent by KR to submit her written unsworn statement for consideration at trial. Trial defense counsel raised only substantive objections to KR's unsworn statement with the military judge, and informed the judge that the parties had come to an agreement to overcome those substantive objections. In so doing, trial defense counsel waived the issue now raised on appeal as to the foundational requirements of KR's victim unsworn statement because "under the particular facts of this case, . . . 'counsel consciously and intentionally failed to save the point and led the trial judge to understand that counsel was satisfied.'" *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) (quoting *United States v. Mundy*, 2 C.M.A. 500, 503 (C.M.A. 1953)).

Finally, we have also evaluated whether to exercise our authority under Article 66(d), UCMJ, to act despite Appellant's waiver (*Chin,* 75 M.J. at 223). We decline to do so.[7]

## B. Ineffective Assistance of Counsel

Notwithstanding Appellant's waiver as to the substantive admissibility of KR's written victim impact statement, Appellant endeavors to attack that decision by his trial defense counsel, asserting that his counsel were ineffective by "failing" to object when the victim herself did not physically offer the victim impact statement at the court-martial. He also makes a separate claim of ineffective assistance of counsel relating to clemency, asserting that his trial defense counsel referenced the wrong law in his clemency memorandum to the convening authority submitted on Appellant's behalf, wherein counsel requested relief the convening authority had no power to grant. Finally, Appellant personally asserts one of his trial defense counsel was ineffective by advising him, after sentence was adjudged in his court-martial, that Appellant would "automatically" earn two-for-one post-trial confinement credit for each day spent in the Weber County Jail.

### 1. Additional Background

This court received post-trial declarations from both Appellant and his trial defense counsel in regards to the factual predicate for Appellant's claims that

---

[7] For the reasons set forth in our analysis of Appellant's ineffective assistance of counsel claims, *infra*, we conclude that piercing Appellant's waiver is unnecessary as there was no error, plain or otherwise, in permitting a crime victim to submit her independently drafted written unsworn statement through the instrumentality of trial counsel.

his counsel were ineffective at trial.[8] We will summarize these declarations in turn as they bear on each of Appellant's claims: (a) trial defense counsel's decision not to further object to KR's unsworn statement; (b) trial defense counsel's clemency submission; and (c) trial defense counsel's post-trial discussions with Appellant regarding confinement credit.

### a. Decision Not to Further Object to KR's Written Victim Unsworn Statement

Appellant's post-trial declaration provides no additional facts on this assignment of error.

The circuit defense counsel, Major (Maj) AB, explained his tactical decision to forego objecting to KR's victim unsworn statement on the grounds that KR was not present at trial. Maj AB explained that the Defense made a calculated judgment to forego objecting to prevent a potentially more effective form of the statement (*see* Section II.A.1, Additional Background, *supra*).

### b. Clemency Submission

Appellant's post-trial declaration did not address Captain (Capt) NW's alleged ineffective representation concerning clemency. That is, Appellant provided no indication in his declaration as to what, if any, different clemency request he would have made but for Capt NW's erroneous citation of law in his clemency memorandum submitted on Appellant's behalf.

Capt NW conceded in his post-trial declaration that he cited the wrong version of Article 60, UCMJ, 10 U.S.C. § 860, in his clemency memorandum to the convening authority.

### c. Post-trial Discussions of Confinement Credit

In his post-trial declaration, Appellant alleges that in a meeting after the conclusion of his court-martial, his defense counsel told him that "all Air Force inmates who spend time at Weber County get 2:1 credit for each day at the facility" given the substandard conditions typically encountered by Air Force inmates there. Appellant attached a declaration from his fiancée, who also attended this meeting; her declaration echoes Appellant's recitation of events.

Capt NW disputes, in part, Appellant's version of their post-trial discussion on confinement credit. According to Capt NW, all his communications concerning post-trial confinement credit were highly conditional, emphasizing that *if*

---

[8] Both of Appellant's trial defense counsel provided declarations in response to an order of this court regarding Appellant's allegations that his counsel were ineffective in their representation of him at trial.

conditions were sufficiently substandard *then* Appellant could petition for additional confinement credit. He stated:

> During my representation of [Appellant], we had many discussions about confinement and the calculation of time. Largely these conversations took place inside the confines of the attorney-client relationship. We discussed numerous ways in which he *might* receive additional credit for his time in confinement. We discussed the credit he would receive for "good behavior" and my understanding that for every eight days he served in confinement he would receive one day of credit as long he did not have any misconduct or behavioral issues.
>
> . . . .
>
> I believe I did advise [Appellant] that *if* his condition[s] were bad enough, he *could potentially* receive additional confinement credit for time served, and I believe I did use 2-for-1 credit as an example. I explained my understanding of 2-for-1 credit meant that for every 1 day of confinement he *could* get 2 days of credit *if* his conditions at Weber County were bad enough or in violation of Air Force or Department of Defense Standards.

(Emphasis added).

**2. Law**

The Sixth Amendment[9] guarantees an accused the right to effective assistance of counsel at all phases of trial and post-trial processing. *See United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (trial); *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001) (post-trial processing). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). To prevail on an ineffective assistance of counsel claim, an appellant bears the burden of demonstrating both deficient performance from defense counsel, and prejudice. *Datavs,* 71 M.J. at 424 (citation omitted). Ultimately, we conduct de novo review for ineffective assistance of counsel claims. *Id.* (citation omitted). If an appellant's factual allegations, even if true, do not constitute prejudicial ineffective assistance of counsel, we need not resolve those issues of fact and instead may resolve the issue based solely upon prejudice.

---

[9] U.S. CONST. amend. VI.

*Id.*[10] Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (alteration and omission in original) (quoting *Strickland*, 466 U.S. at 697; and then citing *Datavs*, 71 M.J. 424–25).

### a. Deficient Performance

"An appellate court's evaluation of attorney performance is made from counsel's perspective at the time of the conduct in question." *United States v. Marshall*, 45 M.J. 268, 270 (C.A.A.F. 1996) (citing *Strickland*, 466 U.S. at 689).

The burden is on the appellant to demonstrate deficient performance. *Datavs*, 71 M.J. at 424 (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689) (additional citation omitted). We consider the following questions to determine whether the presumption of competence has been overcome: (1) whether appellant's allegations are true, and *if so*, is there a reasonable explanation for counsel's actions; (2) whether defense counsel's level of advocacy falls measurably below the performance ordinarily expected of fallible lawyers; and (3) if defense counsel were ineffective, whether there is a reasonable probability that, absent the errors, there would have been a different result. *See United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)); *see also United States v. Akbar*, 74 M.J. 364, 386 (C.A.A.F. 2015) (applying same standard for defense counsel's performance during sentencing proceedings). When considering the last question, "some conceivable effect on the outcome" is not enough; instead, an appellant must show a "probability sufficient to undermine confidence in the outcome." *Datavs*, 71 M.J. at 424 (internal quotation marks and citations omitted).

In assessing claims of ineffective assistance of counsel, we do not look at the success of the defense attorney's strategy "but rather whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (citation omitted). In making this determination, courts must be "highly

---

[10] We are cognizant that Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *United States v. Ginn*, 47 M.J. 236, 243 (C.A.A.F. 1997). Instead, we review the six principles for determining whether a hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam), is appropriate under *Ginn*. *Id.* at 248. Here we determine that the first *Ginn* factor is applicable: "if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in [the] appellant's favor, the claim may be rejected on that basis." *Id.*

deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This specifically applies to sentencing. *See United States v. Stephenson*, 33 M.J. 79, 80 (C.M.A. 1991) (concluding that it was not deficient performance to decline to call a character witness at a sentencing hearing to avoid harmful rebuttal evidence).

"When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion . . . , an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. Beague*, 82 M.J. 157, 167 (C.A.A.F. 2022) (omission in original) (quoting *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018)). Relatedly, "[d]efense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Datavs,* 71 M.J. at 424 (first citing *Gooch*, 69 M.J. at 362–63 (holding a decision not to risk a mistrial where counsel had strategic reasons for keeping the assembled panel was not deficient performance); and then citing *Stephenson*, 33 M.J. at 80 (holding to decline to call a witness during sentencing hearing in order to avoid rebuttal evidence is not deficient performance)). In reviewing the decisions and actions of trial defense counsel, this court does not second-guess strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citations omitted). It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005). For this reason, defense counsel receive wide latitude in making tactical decisions. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 689).

### b. Prejudice

Military appellate courts apply the same prejudice standard as defined by The United States Supreme Court when assessing claims of ineffective assistance of counsel. To establish prejudice, an appellant must:

> demonstrate a *reasonable probability* that, but for counsel's unprofessional errors, *the result of the proceeding would have been different*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (emphasis added) (internal quotation marks and citations omitted); *cited with approval, Datavs*, 71 M.J. at 424. Once again, it is an appellant who bears the burden to demonstrate prejudice. *Id.* This general analytical framework for prejudice is then calibrated to the particular trial phase at issue. Pertinent to this case, "prejudice" for ineffective assistance in the sentencing phase of the court-martial requires us to "look to see 'whether there is a reasonable probability that, but for counsel's error, there would have been a different result.'" *Captain*, 75 M.J. at 103 (citation omitted).

### 3. Analysis

#### a. Admissibility of Victim Unsworn Statement

Analyzing deficient performance in this case requires considering the underlying substantive law concerning victim unsworn statements, because, if there was no support in law for defense counsel to raise an issue at trial, there could be no "deficient performance" as a consequence. *See Beague*, 82 M.J. at 167.

In analyzing how a crime victim may exercise their statutory and regulatory right to be reasonably heard in sentencing, the CAAF held in *Barker* that "the introduction of statements under this rule is prohibited without, at a minimum, either the presence *or request of the victim.*" *Barker*, 77 M.J. at 382 (emphasis added) (footnote and citations omitted). The CAAF then elaborated on the importance of the independent decision of crime victims to exercise their rights in *United States v. Hamilton*, reasoning: "the right to be reasonably heard requires that the victims be contacted, *given the choice to participate in a particular case*, and, if they choose to make a statement, offer the statement themselves, through counsel, or through a 'victim's designee' where appropriate." 78 M.J. 335, 339–40 (C.A.A.F. 2019) (emphasis added) (citations omitted). Read together, *Barker* and *Hamilton* essentially require two prerequisites to admit an absent crime victim's unsworn statement under R.C.M. 1001A (now R.C.M. 1001(c)): (1) the crime victim's knowledge of the court-martial; and (2) the crime victim's intent for the statement to be offered for sentencing consideration at the court-martial at the time the statement is offered. *See Hamilton*, 78 M.J. at 341; *Barker*, 77 M.J. at 383.

Applying these principles, we find no deficient performance in this case because neither Article 6b, UCMJ, nor R.C.M. 1001 require the physical presence of an unrepresented crime victim at court-martial to be "reasonably heard." We find nothing in the plain language of the substantive provisions of law dealing with admissibility of victim unsworn statements at sentencing (*i.e.*, Article 6b, UCMJ, and R.C.M. 1001(c)) that requires a victim to personally enter the

courtroom and present their statement to the military judge.[11] Those provisions of law merely state that a victim has the right to be reasonably heard.

Our holding is not novel. This court found no error in a crime victim providing their oral victim unsworn statement telephonically in *United States v. Clark-Bellamy*, No. ACM 39709, 2020 CCA LEXIS 391, at *16–17 (A.F. Ct. Crim. App. 27 Oct. 2020) (unpub. op.). This court reasoned that physical presence of the victim at trial is *not* a prerequisite to admissibility of that victim's unsworn statement at sentencing stating: "[W]e disagree with Appellant's proposition that a victim (or representative) who is not *physically* present at the sentencing hearing forfeits his or her right to make a statement. R.C.M. 1001A conveys a personal right to the victim and does not expressly mandate physical presence." *Id.*

Indeed, our approach is consistent with that of our superior court. In interpreting the prerequisites for presenting a victim unsworn statement at court-martial, the CAAF proposed two methods: "either presence *or* the request of the victim." *Barker*, 77 M.J. at 382 (emphasis added). The disjunctive "or" is significant because it indicates that a "request" need not involve physical presence.

Synthesizing CAAF's reasoning in *Barker* and the accompanying line of cases, we see three foundational prerequisites were met for consideration of KR's unsworn victim statement in this case: (1) KR created it; (2) KR had *knowledge* of Appellant's court-martial; and (3) KR *intended* for the statement to be offered at Appellant's court-martial at the time the statement was offered. *See United States v. Harrington*, 83 M.J. 408, No. 22-0100, 2023 CAAF LEXIS 577, at *20 (C.A.A.F. 10 Aug. 2023); *Hamilton,* 78 M.J. at 341; *Barker,* 77 M.J. at 383. Accordingly, any objection by trial defense counsel would have been futile.

Relatedly, there was no deficient performance in trial defense counsel's decision not to object to trial counsel's physical "delivery" of the written victim unsworn statement at trial. Trial counsel was acting as a mere *instrumentality* of KR's independent exercise of her right to be reasonably heard at sentencing

---

[11] Appellant effectively would have us disregard the CAAF's construction of R.C.M. 1001(c) in *Barker* in deference to a related but *distinct* provision in R.C.M. 1001(a)(3), to wit: that a military judge has a duty to advise any crime victim "who is present" that they have a right to be reasonably heard at sentencing. We decline to do so. R.C.M. 1001(a)(3) does not restrict a crime victim's right to be reasonably heard; it merely provides an additional mechanism by which the President sought to ensure that crime victims have *actual notice* of their right to be reasonably heard. By contrast, R.C.M. 1001(c) deals with the substantive aspects of admissible forms and content for victim unsworn statements.

via submitting a written victim unsworn statement under R.C.M. 1001.[12] This is wholly distinguishable from the situation in *United States v. Edwards,* where the CAAF found reversible error in trial counsel's assistance in assembling and creating the unsworn statement in the format of a video, and from the facts in *Harrington* where the CAAF found non-reversible error where trial counsel "assisted" victims in delivering their oral unsworn statements via a question-and-answer format. *See Harrington*, 2023 CAAF LEXIS 577, at \*26; *United States v. Edwards*, 82 M.J. 239, 241 (C.A.A.F. 2022). Each of those cases turned upon a determination that trial counsel's substantive involvement in producing the unsworn statement ran afoul of "the principle that an unsworn victim statement belongs solely to the victim or the victim's designee." *Harrington*, 2023 CAAF LEXIS 577, at \*20 (citing *Edwards*, 82 M.J. at 241). As none of those predicate circumstances were present here, there was no deficient performance in not raising a futile objection.[13]

Second, even assuming R.C.M. 1001(c) did not permit admission of a written victim unsworn statement from an absent crime victim at pre-sentencing proceedings we find that trial defense counsel's strategic decision not to object to KR's statement was one of those *tactical decisions* which do not fall "measurably below" the standards expected of fallible lawyers. *See Dewrell,* 55 M.J. at 133 (quoting *Strickland*, 446 U.S. at 690) ("strategic defense counsel choices made after thorough investigation of the facts are virtually unchallengeable"). We are persuaded by the affidavit from the circuit defense counsel that this decision was carefully considered and undertaken to avoid a potentially more persuasive and evocative form of that statement (*i.e.*, that trial counsel would be able to get in touch with KR to provide her statement orally over the phone, replete with more emotion and passion than the mere written word). We disagree with Appellant's suggestion that those assessments and concerns by trial

---

[12] We do *not* hold that all trial counsel "solicitations" of victim unsworn statements from unrepresented victims would satisfy what may be identified as the "independent decision doctrine" of *Barker* and *Hamilton*. These cases are highly fact-dependent and require a case-by-case analysis to determine whether under the circumstances a crime victim made a knowing and independent decision to submit an unsworn statement.

[13] We also decline Appellant's invitation to interpret our ruling in *United States v. Bailey*, No. ACM 39935, 2021 CCA LEXIS 380, at \*14–15 (A.F. Ct. Crim. App. 30 Jul. 2021) (unpub. op.), *rev. denied*, 82 M.J. 103 (C.A.A.F. 2021), to find deficient performance in this case. In *Bailey*, this court held that the military judge erred in permitting a trial counsel to read a written victim unsworn statement into the record. *Id.* We find *Bailey* factually distinguishable. Unlike in *Baile*y, where trial counsel's act of reading the written victim unsworn statement aloud literally consisted of a different form of the statement (*i.e.*, "oral" versus "written"), here trial counsel's mere offering of the independently drafted victim unsworn statement did not change the nature of the statement (*i.e.*, it was offered as a written victim unsworn statement and remained so).

defense counsel were unreasonable. Trial defense counsel's risk analysis and subsequent decision—to allow a less impactful form of the evidence in an effort to neutralize what might otherwise be emotionally impactful statement—in this case did not fall measurably below standards expected of fallible lawyers.

In the absence of any "deficient performance" by his trial defense counsel, Appellant is entitled to no relief for this assignment of error. *Datavs,* 71 M.J. at 424 (citation omitted).

### b. Clemency Submission

Given Capt NW's concession that he cited to an inapplicable version of Article 60, UCMJ,[14] in clemency and, as a consequence, requested clemency relief that the convening authority was not empowered to give (*i.e.*, reduction in confinement from 24 to 12 months), we will assume without deciding that the "deficient performance" prong of the *Strickland* standard is satisfied and proceed to a prejudice analysis.

Appellant failed to demonstrate there is a reasonable probability that, but for counsel's error, there would have been a different result. He has failed to identify what, if anything, he would have changed in his clemency submission but for counsel's misstatement of the law. Appellant is silent in his post-trial declaration about what alternate clemency he was interested in. Appellant's burden is not satisfied by counsel merely suggesting what Appellant "could" have done if given an opportunity to re-submit clemency, but rather what Appellant *would* have done absent the initial clemency error. We find Appellant has failed in his burden to demonstrate prejudice resulting from trial defense counsel's purportedly deficient performance in seeking clemency.

### c. Post-Trial Discussions of Post-Trial Confinement Credit

In turning to address Appellant's final ineffective assistance of counsel claim, we opt to resolve this assignment of error based upon the lack of prejudice. *See Datavs,* 71 M.J. at 424–25.

Appellant essentially argues that he felt a false sense of hope from his trial defense counsel's discussions with him concerning post-trial confinement credit. However, Appellant fails to provide a nexus between that false hope and any impairment it had on a substantial right.[15] Absent that nexus there can be

---

[14] In accordance with the CAAF's decision in *United States v. Brubaker-Escobar,* 81 M.J. 471, 474 (C.A.A.F. 2021) (per curiam), it was Article 60, UCMJ (2016 *MCM*), which applied during Appellant's post-trial processing.

[15] For example, Appellant does not claim trial defense counsel's error caused him to suffer substandard post-trial confinement conditions or affected the exercise of his

no prejudice; no "different outcome" is made possible by the absence of the alleged deficient conduct.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

right to request relief from any such conditions. Appellant also raises no claim that he would have entered a different plea or declined to enter into a plea agreement altogether, had he been "properly advised" on what amounts to *post hoc* advice on a collateral matter. *See United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citation omitted) (noting that when ineffective assistance of counsel concerning plea negotiations and a decision to plead guilty are concerned: *"[I]n order to satisfy the 'prejudice' requirement, [an appellant] must show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."* (Emphasis added).). We also note that calculations of other forms of potential confinement credit are generally considered to be collateral matters. *See, e.g.*, *United States v. McNutt*, 62 M.J. 16, 19 (C.A.A.F. 2005) (holding issues of good credit time and parole eligibility are collateral matters). Accordingly, any erroneous advice here would only be prejudicial if it materially influenced Appellant's decision to plead guilty.